Madix, Inc., appeals the judgment of the Tallapoosa Circuit Court finding Lenward Douglas Champion to be permanently and totally disabled as a result of two cumulative-physical-stress injuries to Champion's back. Although Madix raises several issues on appeal, the dispositive issue is whether Champion established medical causation by clear and convincing evidence under the Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975. We conclude that he did not, and, therefore, we reverse and remand with instructions.
In March 1994, Champion sustained an injury to his back at L4-5 in a work-related accident while working as a supervisor in Madix's saw department and wood shop. Champion testified that his duties as a supervisor included general supervision of employees, driving a forklift, and sometimes operating a table saw. In April 1995, Champion took a leave from work to undergo surgery on his injured back. He returned to his supervisor position at Madix in July 1995. In October 1997, Champion and Madix entered into a workers' compensation settlement regarding Champion's 1994 L4-5 injury.
Champion testified that, although his back condition improved temporarily following the surgery, his back "never . . . quit hurting." Champion further testified that his back pain gradually worsened after the surgery. He stated that his back would hurt worse during some periods than others. Champion testified that his physical therapist had told him in 1996 or 1997 that he would always need medical care and medication for his back because of his 1994 injury.
Champion testified that several events associated with "everyday living" caused him increased back pain in the years following his 1995 surgery; those events included crawling under his house, coughing with bronchitis, climbing stairs at home, walking up and down an incline, sitting with a family member at a hospital, and standing at a family reunion. Champion also testified that on a number of occasions his back pain would worsen without any precipitating event.
In November 1998, Champion left his supervisor position and became a quality-control inspector at Madix. Champion testified that as quality-control inspector he had to bend, twist, and kneel to inspect wood products. He testified that, after he started his new position in November 1998, his back pain became "twice as bad" as it had been before. Champion further testified that "standing up and staying on the *Page 835 
cement and all of that aggravated [his back]."
In September 1999, Champion, pursuant to instructions from his physical therapist, took a leave of absence from work to rest his back. Champion testified that his back did not significantly improve during that period. Champion was unable to return to work, and Madix terminated his employment in early 2000.
Two of Champion's treating physicians, Dr. Stan Faulkner and Dr. Rita Harvey, testified by deposition regarding the possible causes of Champion's injuries. In November 1994, Dr. Faulkner first treated Champion for the work-related injury at L4-5 that Champion had sustained in March 1994. Dr. Faulkner testified that the results of a 1999 MRI on Champion indicated some disk protrusion at L5-S1 and some bulging of the L4-5 nerve root. Dr. Faulkner characterized the disk protrusion at L5-S1 as "a new and different problem" that was distinct from Champion's 1994 work-related injury. He opined that the L5-S1 injury was caused by degenerative disk disease, a disease Champion suffered from when Dr. Faulkner initially treated him in 1994. Dr. Faulkner further testified that a CT myelogram performed on Champion in 1996 indicated foraminal stenosis, disk degeneration, and disk-space collapse at L4-5.
Dr. Faulkner gave the following testimony regarding whether Champion's work activities contributed to his degenerative-disk problems:
 "Q. Is it your opinion that the [L5-S1] disk problem is directly related to the progressive nature of his degenerative disk disease?
"A. Yes.
"Q. From just life?
"A. Right.
". . . .
 "Q. . . . [If] you're working in a job that required those things, which you in 2000, limited [Champion] from not doing [walking on concrete floors, repetitive bending, stooping, crawling, and climbing], wouldn't that cause [his degenerative condition] to happen quicker?
"A. No, I don't think so.
 "Q. But do you deny absolutely that in your professional opinion it could not happen?
 "A. It possibly can happen. But I think it's more likely not than so. I think it's less likely than it would happen. . . . In my honest opinion, does walking on concrete make a disk herniate? No. I don't think it does. I really don't.
"Q. Walking on concrete —
"A. Climbing stairs. . . .
"Q. Stooping and bending, which are part of his job —
 "A. No more than sitting around the house, walking through the yard, getting in and out of a car.
". . . .
 "Q. So you don't think any of those things would could increased [sic] the degenerative disease at all, any of those activities?
"A. Yes, they possibly could.
 "Q. And that increase, other than what we would call repetitive everyday activities, would be attributable to [Champion's] job, would it not?
"A. If that was causing it. Again, I just —
 "Q. You just testified that it could make it happen quicker?
 "A. Sure. You know getting up and down off the toilet can do it. Bending over and brushing your teeth could do it. I don't think that *Page 836 
walking on concrete and going up and down stairs is going to contribute significantly to disk degeneration. It might aggravate your symptoms . . . but I don't think it's going to do any damage or cause any more harm.
". . . .
 "Q. . . . Is [the L5-S1 injury] a separate injury that was caused — that was exacerbated — an injury in essence because it was exacerbated by his work?
"A. No.
". . . .
 "A. . . . [Champion] can also have degeneration of two or three more disks within the next few years. You could go back and attribute that to everyday work that he's done over the last few years. So yes, him working contributed to the degeneration, just like him not working and walking around and being in a normal lifestyle. . . .
 "Q. But your testimony is that it wouldn't increase because of those things that were part of his job?
"A. That's correct.
 "Q. But you can't testify for sure? You testified before that you didn't know.
 "A. I think it's more likely than not that it wouldn't. And from the 15 years of experience I have with spine problems, I would not attribute it to that."
Dr. Harvey first treated Champion in April 2000 and treated him periodically in 2001 and 2003. Dr. Harvey testified that Champion had complained that stooping, bending, and kneeling at work had aggravated his back. She testified that Champion has "some diffuse degenerative disease that would be difficult to say . . . was from the job or from natural progression." Dr. Harvey opined that Champion's job "could" make his degeneration "come on a little faster."
On May 17, 2001, Champion filed a workers' compensation claim against Madix seeking disability benefits for several alleged work-related injuries, including injuries to his back. Following a bench trial on December 17, 2003, the trial court entered a judgment on May 14, 2004. The judgment contained the following pertinent findings of fact:
 "[Champion] suffered two injuries to his lower back while working within the line and scope of his employment.
". . . .
 "Champion received on-the-job injuries, both exacerbating the 1994 injury and also a new injury in the line and scope of his employment as an employee of Madix, which either injury, by itself, was proven to render Champion totally disabled and therefore both combined rendered totally and permanently disability, over time which rendered him disabled on April 1, 2000.
". . . .
 "It appears clear and convincing that the totality of all medical evidence present along with the testimony of [Champion] that [Champion] did sustain new on-the-job injuries that exacerbated his fully repaired L4-5 prior injury and new injuries to the L5-S1 parts of his back which has caused Champion to in fact be permanently and totally disabled."
On appeal, Madix argues, among other things, that the two cumulative-physical-stress injuries to Champion's back at L4-5 and L5-S1, respectively, were not caused by his employment with Madix.
 "In a workers' compensation case, the Court of Civil Appeals reviews the `standard of proof . . . and other legal issues *Page 837 
without a presumption of correctness.' § 25-5-81(e)(1), Ala. Code 1975. A trial court's judgment in a workers' compensation case based on pure findings of fact will not be reversed if it is supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Substantial evidence is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Ex parte Professional Bus. Owners Ass'n Workers' Comp. Fund,867 So.2d 1099, 1102 (Ala. 2003).
Injuries resulting from gradual deterioration or cumulative physical stress, as in the present case, are "compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment." §25-5-81(c), Ala. Code 1975. Section 25-5-81(c) defines "clear and convincing" evidence as
 "evidence that, when weighted against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
To establish that a cumulative-physical-stress injury is compensable under the Workers' Compensation Act, the employee must establish both legal and medical causation by clear and convincing evidence. Valtex, Inc. v. Brown, 897 So.2d 332, 334
(Ala.Civ.App. 2004); Safeco Ins. Co. v. Blackmon, 851 So.2d 532
(Ala.Civ.App. 2002); and § 25-5-81(c), Ala. Code 1975. To establish legal causation, the employee must prove that "the performance of his or her duties as an employee exposed him or her to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives." Ex parteTrinity Indus., Inc., 680 So.2d 262, 267 (Ala. 1996). To establish medical causation, the employee must prove that the danger or risk to which the employee was exposed "`was in fact [a] contributing cause of the injury'" for which benefits are sought. Id. at 269 (quoting City of Tuscaloosa v. Howard,55 Ala.App. 701, 318 So.2d 729, 732 (Civ. 1975)).
"`[I]t is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence, and not in the witness's use of any magical words or phrases, that the test [for medical causation] finds its application.'" Ex parte Southern Energy Homes, Inc.,873 So.2d 1116, 1121 (Ala. 2003) (quoting Ex parte Price, 555 So.2d 1060,1063 (Ala. 1989)) (emphasis omitted). Considering "the overall substance and effect of the whole of the evidence," we cannot say that there is clear and convincing evidence of medical causation in this case. Although Dr. Faulkner testified that it was "possible" that Champion's work activities caused or contributed to the degeneration of his disks, he testified that it was more likely than not that they did not cause or contribute to that degeneration. Although Dr. Harvey testified that Champion's work activities "could" have accelerated the degeneration of Champion's disks, she testified that it "would be difficult to say" whether his disk degeneration was attributable to his work activities or to the natural progression of the degenerative disease. *Page 838 
"It is a well established principle that evidence presented by a work[ers'] compensation claimant must be more than evidence of mere possibilities that would only serve to `guess' the employer into liability." Hammons v. Roses Stores, Inc., 547 So.2d 883,885 (Ala.Civ.App. 1989) (citing Stewart v. Busby,51 Ala.App. 242, 284 So.2d 269, 272 (Civ. 1973)). Although Champion's testimony implies that his employment was a contributing factor to his injuries, the testimony of the doctors established no more than a "possibility" that his employment contributed to his injuries. Moreover, Champion testified that the back pain from his 1994 injury, a separate injury from the two injuries in dispute here, never completely dissipated. He also testified that numerous events unrelated to work had caused him back pain during the years after his back surgery in 1995. Given the totality of the evidence, we conclude that Champion did not prove medical causation by clear and convincing evidence.
 Conclusion
Accordingly, we reverse the trial court's judgment, and we remand the case to the trial court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and PITTMAN, J., concur.
THOMPSON and MURDOCK, JJ., concur in the result, without writing.