47 So.3d 749 (2006)
KGS STEEL, INC.
v.
Donald McINISH.
2040526.
Court of Civil Appeals of Alabama.
June 30, 2006.
Rehearing Denied January 5, 2007.
*750 Joseph H. Driver and Bennett L. Pugh of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for appellant.
E.L. Brobston of Brobston & Brobston, P.C., Bessemer, for appellee.
PER CURIAM.
In April 1999, Donald McInish sued KGS Steel, Inc. ("KGS"), in the Bessemer Division of the Jefferson Circuit Court, seeking an award of benefits under the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975 ("the Act"). In his complaint, McInish alleged, among other things, that during his employment as a truck driver for KGS, he had been subjected to "violent bouncing and jerking movement" that had caused him to suffer from carpal tunnel syndrome and that that movement, combined with "strain caused by strapping and binding cargo loads," had caused damage to his shoulders and neck; he further alleged that he had suffered both a temporary and a permanent partial disability as a result of his claimed injuries. After KGS had answered the complaint, the cause was stayed pending the resolution of receivership proceedings involving KGS's insurer; the cause was ultimately tried on April 14, 2004.
At trial, the parties stipulated that McInish had suffered a carpal-tunnel-syndrome injury that resulted in a 3% permanent partial impairment to both hands and that that injury was compensable. The parties also agreed that the real issues in the case were whether McInish's neck and shoulder problems were a result of an injury that arose out of and in the course of his employment and, if so, the degree of the loss of his earning capacity. Following the trial, the trial court entered a judgment determining that McInish was totally and permanently disabled as a consequence of his neck and shoulder conditions; that he had a 100% loss of earning capacity; that he had proven both medical and legal causation; and that KGS was liable for payment of certain medical expenses incurred as a result of treatment undertaken by a medical provider whom KGS did not authorize.
KGS appeals from that judgment, raising three issues: (1) whether McInish presented "clear and convincing" evidence that his neck and shoulder injuries were compensable under the Act; (2) whether the trial court erred in determining that McInish had suffered a permanent and total disability; and (3) whether the trial court erred in concluding that KGS was responsible for payment of medical treatment that KGS did not authorize.
We briefly summarize the facts giving rise to McInish's claim. McInish was a tractor-trailer truck driver for KGS, and there was evidence adduced at trial indicating that the suspension system of his assigned truck subjected him to violent vibrations. McInish testified that during the last year of his employment with KGS he had started to experience severe pain, numbness, and a tingling sensation in his hands and arms and that he had reported those symptoms to KGS.
McInish was referred by KGS to Dr. Donald Autry for treatment. Dr. Autry determined that McInish had carpal tunnel syndrome and performed a surgical carpal-tunnel-release procedure on each of McInish's wrists. In subsequent months, McInish reported further pain, including pain in his shoulder and upper arm. McInish was then referred to Dr. Richard Meyer, an orthopedic surgeon, for a second opinion; *751 Dr. Meyer determined that McInish had problems in his neck and hand. Dr. Meyer suggested that McInish undergo a second carpal-tunnel-release procedure; however, because McInish was dissatisfied with the results of the carpal-tunnel-release procedures that had already been performed and because he did not want to go through another carpal-tunnel-release procedure if carpal tunnel syndrome was not his principal medical problem, McInish sought the opinion of his own personal physician without obtaining KGS's approval. McInish's personal physician then referred McInish to Dr. Cem Cezayirli, a neurosurgeon. Dr. Cezayirli, who was also not authorized by KGS to treat McInish, nonetheless admitted him into the hospital for cervical-disk surgery, during which significant ruptured-disk material and a herniated disk compressing the neuroforamen and the spinal cord were found. After his cervical-disk surgery, McInish was permitted by Dr. Cezayirli to return to work. However, McInish was reportedly unable to perform his job because of pain, and he has not worked since January 27, 1999.
Under the Act, our review of the "standard of proof" and "other legal issues" in an appeal from a judgment entered on a claim arising under the Act is to be undertaken "without a presumption of correctness." Ala.Code 1975, § 25-5-81(e)(1). That legislative injunction is particularly significant in this case, which undisputedly involves a claim of disability arising from an alleged work-related injury to McInish's shoulders and neck resulting from gradual deterioration; such claims are, as we will discuss herein, subject to a heightened "standard of proof."
In 1992, the Alabama Legislature made a number of procedural and substantive changes to the law governing workers' compensation claims. See Act No. 92-537, Ala. Acts 1992. In § 1 of that statute, the legislature observed:
"It is . . . the intent of the Legislature. . . to address difficulties in the current scheme that are producing a debilitating and adverse effect on the state's ability to retain existing industry and attract new industry. The Legislature finds that the current Workmen's Compensation Law of Alabama and other means of compensation or remedy for injury in the workplace ha[ve] unduly increased cost to employers in the state, driven away jobs, and produced no concomitant benefit. There is a total absence of any reliable evidence that the current act has resulted in fewer injuries on the job, and a considerable body of evidence that any added benefit to the worker is significantly offset by the resulting reduction in job opportunities.
"The Legislature has reviewed substantial evidence related to various types of cumulative physical stress disorders, cumulative trauma disorders and certain `natural aging' disorders, including carpal tunnel syndrome, repetitive motion syndrome, and even back and neck infirmities that result from gradual deterioration or the natural process of aging. The Legislature has concluded that it is extremely difficult for the adjudicator of fact to determine whether these disorders are related to work or whether they result from some congenital defect, aging processes, or simply the routine activities of daily living.
"These claims also account for a substantial percentage of the workers' compensation claims in this state and are one of the contributing causes of the current workers' compensation crisis facing this state."
Act No. 92-537, among other things, amended § 25-5-81, Ala.Code 1975, to state that the standard of proof in workers' *752 compensation cases would be proof by the preponderance of the evidence "except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment." Act No. 92-537, § 26 (emphasis added), now codified as Ala.Code 1975, § 25-5-81(c).
It is well settled that when the preponderance-of-the-evidence standard applies to a particular workers' compensation claim, such as one arising from an injury caused by a sudden trauma, an appellate court will not reverse a judgment based upon a particular finding of fact "if that finding is supported by substantial evidence  if that finding is supported by `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996) (quoting West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989)) (emphasis added). However, as the main opinion in Ex parte Russell Corp., 725 So.2d 264 (Ala. 1998), indicates, a mere "substantial evidence" standard of appellate review is not to be applied if the "clear-and-convincing-proof" standard was applicable at trial.[1] In other words, by incorporating a "clear and convincing" evidentiary standard into the Act with respect to gradual-deterioration and cumulative-stress injuries, the legislature has "require[d] a comparison between the supporting evidence and any countervailing evidence" on appellate review. See Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1128 (Ala. 2003) (Johnstone, J., dissenting, joined by Woodall, J.).[2] Thus, "there is necessarily a `reweighing' of the evidence at the appellate level[] for th[e] limited purpose" of determining whether factual determinations are supported by the appropriate level of evidence (here, "clear and convincing proof"). See id. at 1131 (Harwood, J., dissenting) (emphasis omitted).
KGS argues that McInish failed to present clear and convincing evidence of medical causation as required under § 25-5-81(c). As might be expected, resolution of that issue requires a close examination of the pertinent evidence adduced at trial that appears in the record on appeal.
Dr. Meyer, McInish's authorized orthopedic surgeon, testified at his deposition that after a magnetic-resonance-imaging procedure had been performed in late 1998 and had revealed bulging cervical disks and neck-nerve pressure related to osteoarthritis, he had referred McInish to Dr. John S. Kirkpatrick, who had concluded that the arthritis in McInish's neck "would probably not be work related." Dr. Meyer also opined that the majority of the pain McInish had experienced was related to that osteoarthritis and denied that McInish's occupation could have caused or aggravated his osteoarthritis. Dr. Meyer further opined on cross-examination by *753 McInish's attorney that driving a truck subject to constant vibration and shaking would not adversely affect McInish's condition as to his neck and shoulders.
Dr. Edward Kelsey, a pain specialist whom McInish consulted without authorization from KGS, opined that McInish suffered from degenerative joint disease (essentially, a pronounced case of advanced osteoarthritis) and from "post laminectomy syndrome." After indicating that repeated trauma "can cause microscopic changes in the bone structure and in the joints" so as to accelerate osteoarthritis, he opined that McInish's occupation would be "consistent with" this type of trauma and that the problems reported by McInish "could have been" as a result of cumulative trauma. However, Dr. Kelsey also opined that McInish's advanced osteoarthritis had set in over the course of an approximately "ten-year period of time," whereas McInish worked for KGS for less than one and a half years before filing a first report of injury in November 1997. Further, Dr. Kelsey, on cross-examination, admitted that he did not have any evidence to dispute Dr. Kirkpatrick's and Dr. Meyer's opinions that McInish's neck and shoulder conditions were not work related, and in response to a question concerning whether he could state with any degree of medical certainty that McInish's neck and shoulder problems were work related, he stated that he could not definitely say that those symptoms were work related.
Dr. Laura B. Kezar, a physician who examined McInish in March 1999 upon the referral of Dr. Thomas, noted in her report of that examination her impression that McInish suffered from cervical spondylosis and degenerative disk disease; she noted in her report that McInish had not supplied a "history to suggest an acute disc herniation related to a traumatic event at work" and that he had reported "no history of neck pain until after the surgery on his neck" was performed by Dr. Cezayirli. Dr. Kezar opined that McInish's neck pain "appear[ed] to be mainly myofascial in origin" (i.e., muscular) and averred that it "d[id] not seem likely" that McInish's work caused the problems in his neck "based on the history that he ha[d] given" her.
Certain records of Dr. Cezayirli, who performed the cervical-disk surgery on McInish, were also admitted into evidence. In a March 1999 letter to Dr. Reid S. Christopher, Dr. Cezayirli indicated that McInish had told him that "he thinks this is work-related." Dr. Cezayirli opined that "it certainly could be work-related," but he stated that it was difficult for him to render such an opinion because, he said, McInish consulted him well after any on-the-job injury would have occurred. However, in a November 1999 letter to McInish's counsel, he expressly deferred to the treating physician who had seen McInish at the time he had originally reported symptoms (e.g., Dr. Meyer).
At trial, McInish himself testified that he had not experienced comparable levels of neck and shoulder pain before working for KGS, that he believed that that pain could be related to "throwing . . . chains and binders and driving [his] truck," and that KGS was responsible for his having sustained what he termed "spinal cord damage" because, he said, KGS "wouldn't take care of the problem in my neck and kept pushing me off." However, on cross-examination, McInish admitted having executed an application for disability-income benefits in March 1999 on which appeared the response of "no" to a question asking whether his claimed disability had resulted from his employment; he also admitted having received monthly benefit payments of over $500 after that application was submitted. McInish further testified to having unsuccessfully requested KGS personnel *754 in April 1999 to amend his November 1997 written first notice of injury, which had indicated only "wrist pain and numbness," to include a shoulder injury.
In urging affirmance of the trial court's judgment, McInish relies primarily upon the majority opinion in International Paper Co. v. Melton, 866 So.2d 1158 (Ala.Civ. App.2003). In that case, a judgment awarding workers' compensation benefits to a particular employee based on a cumulative-stress disorder allegedly arising from his employment was affirmed on the basis that a physician had opined that the employee's work as a forklift driver "`could be causative and can be a contributing factor'" with respect to the employee's disorder (carpal tunnel syndrome). 866 So.2d at 1167.
The majority opinion in Melton distinguished United Defense, L.P. v. Willingham, 829 So.2d 771 (Ala.Civ.App.2002), in which this court reversed a similar judgment because the strongest tendency of the expert testimony was that the employee's work "could possibly [have] cause[d]" her gradual-deterioration condition in that case. 829 So.2d at 772. Thus, the majority opinion in Melton, when compared with Willingham, indicates that the "clear and convincing" evidentiary standard enunciated in § 25-5-81(c) may be deemed satisfied on appeal by expert-opinion evidence indicating a probability, rather than a mere possibility, of medical causation. But cf. Ex parte Southern Energy Homes, Inc., 873 So.2d at 1122 (in which the Supreme Court, in an opinion issued on the same day that Melton was decided by this court and invoking the more lenient "substantial evidence" standard of review, nevertheless reversed a judgment awarding workers' compensation benefits based upon an employee's back condition when the expert testimony regarding medical causation "at best established a possibility that [that employee's] back condition was caused by her alleged on-the-job injury").
Assuming, without deciding, that the holding in Melton is consistent with the evidentiary standard set forth in § 25-5-81(c) and the appellate-review standard indicated in Ex parte Russell Corp., supra, the expert evidence upon which McInish urges reliance plainly does not amount to evidence of "probable" causation. As our recent opinion in Madix, Inc. v. Champion, 927 So.2d 833 (Ala.Civ.App.2005), holds, a judgment awarding workers' compensation benefits based upon a cumulative-stress disorder or a gradual deterioration cannot properly be affirmed when the testimony of the pertinent medical experts establishes "no more than a `possibility' that [an employee's] employment contributed to [the employee's] injuries" so as to simply "`"guess" the employer into liability.'" 927 So.2d at 838 (quoting Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App.1989)). The testimony of Dr. Kelsey and the qualified opinions of Dr. Cezayirli amount to nothing more than a showing of "possible" causation that is insufficient to support the trial court's judgment that McInish's disability, which is based in significant part upon his neck and shoulder conditions, arose out of his employment with KGS.
The insufficiency of the evidence concerning causation likewise renders infirm both the trial court's conclusion regarding the degree of McInish's disability resulting from his employment (a conclusion that was based primarily upon McInish's back and neck symptoms) and that court's determination that KGS should be held liable for the payment of medical treatment that was rendered to McInish with respect to his back and neck symptoms without the consent of KGS. See Drummond Co. v. Harris, 824 So.2d 775, 778 (Ala.Civ.App. 2001) (reversal of workers' compensation *755 judgment on basis that trial court erred in determining existence of occupational disease obviated necessity of addressing degree of employee's disability), and 2 Terry A. Moore, Alabama Workers' Compensation § 17:2 (1998) (noting that the Act does not require an employer to furnish medical and surgical attention for health conditions unrelated to the employment). Thus, for the reasons stated herein, the trial court's judgment is reversed in its entirety, and the cause is remanded for the entry of a judgment or for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, J., concurs specially.
THOMPSON and BRYAN, JJ., concur in the result, without writing.
MURDOCK, J., concurs in the result, with writing.
CRAWLEY, P.J., dissents, with writing.
PITTMAN, Judge, concurring specially.
I concur in the main opinion (which incorporates work performed both by my office and by Presiding Judge Crawley's office), but I believe that a separate, but brief, explication of my own views would be appropriate in light of the special writings that have been issued.
I continue to believe that International Paper Co. v. Melton, 866 So.2d 1158 (Ala. Civ.App.2003), in which I dissented, was wrongly decided; I further believe that it now should be overruled as inconsistent with the majority opinion in Ex parte Southern Energy Homes, Inc., 873 So.2d 1116 (Ala.2003). It should be remembered that the injury claimed to be work related in Southern Energy was a sudden trauma, i.e., a fall from a ladder. Under the Alabama Workers' Compensation Act, Ala. Code 1975, § 25-5-1 et seq., the "preponderance" of the evidence standard of proof applicable in an action seeking benefits as to such an injury is more lenient than the "clear and convincing" standard of proof applicable in the instant case, which involves a condition attributed to gradual deterioration and/or cumulative stress. See Ala.Code 1975, § 25-5-81(c). Moreover, the Supreme Court reversed this court's judgment affirming the trial court's judgment in Southern Energy despite lay testimony of causation from the employee and expert medical evidence indicating that there was a possibility that the employee's problems in that case were a result of the injury she described.
If a majority of the Alabama Supreme Court could conclude, after a review of the conflicting evidence in Southern Energy, that the employee in that case had not adduced "substantial evidence" of causation because "[n]one of the doctors who treated [the employee] stated with any degree of certainty that [her] back condition was due to the alleged workplace injury," 873 So.2d at 1122 (emphasis added), it stands to reason that the causation evidence adduced by the employee in this case would not meet an even heavier "clear and convincing" evidence standard so as to warrant affirmance. As an intermediate appellate court, we are bound to apply the majority opinion in Southern Energy to cases that come before this court unless and until that opinion is modified or overruled by the Supreme Court or its holding is superseded by a subsequent statute to the contrary.
Southern Energy is wholly consistent with United Defense, L.P. v. Willingham, 829 So.2d 771 (Ala.Civ.App.2002), a case that I authored and in which a majority of this court concurred in the reversal of a judgment awarding workers' compensation benefits because the testimony of two medical experts in that case indicated merely that the job duties of the employee in that *756 case "could cause" or "could possibly cause" carpal tunnel syndrome. 829 So.2d at 772-73. I believe that under both United Defense and Southern Energy, expert evidence indicating a mere possibility that an employee's cumulative-stress injury arose out of the pertinent employment, whether coupled or not with favorable lay causation testimony, cannot meet the clear-and-convincing-proof standard in the face of contrary expert evidence clearly indicating that an employee's injury was not work related. Conversely, to the extent that Melton indicates that medical testimony indicating that an employee's cumulative-stress injury "`could have been'" or "`probably was'" work related meets the clear-and-convincing-proof standard adopted by our legislature (866 So.2d at 1168), it is inconsistent with Southern Energy. Although I agree with the main opinion that it is unnecessary to address the continuing vitality of Melton in order to decide the particular case before the court, it is my firm belief that the employers of Alabama and their insurers should not be "guessed" into liability by reliance upon equivocal or evasive opinions concerning medical causation.
MURDOCK, Judge, concurring in the result.
I concur in the result reached by the lead opinion. I do not agree with the manner in which the lead opinion reaches that result.
Were the lead opinion to be joined by a majority of the judges of this court, it would disturb what heretofore have been the most fundamental and settled of principles governing appellate review  principles that are firmly established in workers' compensation cases, just as they are in civil cases generally. I also am compelled to respond to what I believe to be mischaracterizations by the lead opinion of the holdings of this court in International Paper Co. v. Melton, 866 So.2d 1158 (Ala.Civ. App.2003), and Madix, Inc. v. Champion, 927 So.2d 833 (Ala.Civ.App.2005).

I. Appellate-Review Principles

The lead opinion reaches its result by proposing to unsettle two fundamental principles of appellate review. The first is that when a trial court makes findings based on evidence received ore tenus, those findings are to be upheld on appeal if supported by "substantial evidence." The second principle, which is a corollary to and informs the proper operation of the first, is that when evidence is received by a trial court ore tenus, it is uniquely the trial court's responsibility to assess the quality of that evidence, including its credibility, and the weight to be assigned thereto, and that the appellate courts are not equipped, and it is not their role, to make their own assessment of the quality, credibility, or weight to be assigned to the evidence. In other words, appellate courts do not reweigh the evidence. I do not find it necessary, and more importantly I do not believe it to be appropriate, to unsettle those principles in order to reach the result reached by the lead opinion.
The lead opinion contains the following statement:
"It is well settled that when the preponderance-of-the-evidence standard applies to a particular workers' compensation claim, such as one arising from an injury caused by a sudden trauma, an appellate court will not reverse a judgment based upon a particular finding of fact `if that finding is supported by substantial evidence  if that finding is supported by "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."' Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 *757 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)) (emphasis added). However, as the main opinion in Ex parte Russell Corp., 725 So.2d 264 (Ala. 1998), indicates, a mere `substantial evidence' standard of appellate review is not to be applied if the `clear-and-convincing-proof' standard was applicable at trial. In other words, by incorporating a `clear and convincing' evidentiary standard into the Act with respect to gradual-deterioration and cumulative-stress injuries, the legislature has `require[d] a comparison between the supporting evidence and any countervailing evidence' on appellate review. See Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1128 (Ala.2003) (Johnstone, J., dissenting, joined by Woodall, J.). Thus, `there is necessarily a "reweighing" of the evidence at the appellate level[] for th[e] limited purpose' of determining whether factual determinations are supported by the appropriate level of evidence (here, `clear and convincing proof'). See id. at 1131 (Harwood, J., dissenting) (emphasis omitted)."
47 So.3d at 752 (footnote omitted).
I first note that the main opinion in Ex parte Russell Corp., 725 So.2d 264 (Ala. 1998), upon which the lead opinion in the present case relies, does not constitute binding precedent, having been joined by only four of the Justices serving on the Alabama Supreme Court at the time it was issued. Similarly, of course, the dissenting opinions of Justice Johnstone and Justice Harwood in Ex parte Southern Energy Homes, Inc., are not precedential holdings. As to Justice Johnstone's opinion, see also, note 2, infra.
Second, it is axiomatic that consideration of any legal question, such as that before us, should begin with the governing statute, if there is one. In this case, there is. In § 25-5-81(c), Ala.Code 1975, our legislature makes provision for both a "preponderance-of-the-evidence" standard and a "clear-and-convincing" evidentiary standard, and specifies the types of workers' compensation claims to which each is applicable. Without drawing any distinction between those two trial-court evidentiary standards, § 25-5-81(e) thereafter provides simply as follows:
"From an order or judgment, any aggrieved party may . . . appeal to the Court of Civil Appeals and review shall be . . . as follows:
". . . .
"(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."
(Emphasis added.)
There is no reference whatsoever to § 25-5-81(e) in the main opinion in Ex parte Russell Corp. For whatever reason, that opinion failed to take cognizance of § 25-5-81(e)(2) when it asserted that "substantial evidence" was not the appropriate appellate standard of review in a case in which the ultimate evidentiary standard was "clear and convincing" evidence, rather than a preponderance of the evidence.
Because the statute is clear, and because there is no binding Supreme Court precedent to the contrary, I do not believe this court has any alternative but to follow the statute. In other words, "substantial evidence" is not only the proper standard (for the reasons more fully discussed below), it is the statutorily required standard, of appellate court review of fact findings based on ore tenus evidence, regardless of whether the trial court's evidentiary standard is merely the "preponderance-of-the-evidence" standard or is the "clear-and-convincing-evidence" standard.
*758 There also exists statutory confirmation for the corollary that the task of weighing the evidence in a workers' compensation case in which the evidentiary standard is the clear-and-convincing standard, is (as in any workers' compensation case, or in any case for that matter) to be performed by the trier of fact, not the appellate court. Section 25-5-81(c), Ala.Code 1975, defines "clear and convincing evidence," and clearly states that it is "evidence that, when weighted against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." (Emphasis added.) Thus, the definition itself reaffirms the applicability of perhaps the longest and most firmly established principle of appellate review, namely that the weighing of evidence received ore tenus is a task to be performed by the trier of fact.[3]
All of this is not to say, however, that the same quantum of proof is sufficient to sustain on appeal either a fact finding based on a preponderance-of-the-evidence standard or a fact finding based on a clear-and-convincing-evidence standard.
Section 12-21-12(d), Ala.Code 1975, defines "substantial evidence" as "evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven." This has long been explained as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." E.g., West v. Founders Life Assurance Co. of Florida, 547 So.2d *759 870, 871 (Ala.1989) (quoted with approval in Ex parte Southern Energy Homes, Inc., 873 So.2d at 1122).
Although "substantial evidence" must be found by the appellate court in order to sustain the trial court's findings in any workers' compensation case, it is necessary to take into consideration the nature of the finding that must be made by the trial court in order to determine what qualifies as "substantial evidence" to support that finding. In a case in which, in order to find for the plaintiff, the trial court is required to find that a given fact has been established by a "preponderance" of the evidence, the evidence is not sufficient to allow appellate affirmance of a judgment based on that finding unless the record contains evidence from which the fact-finder reasonably could have determined that the fact was proven by a preponderance of the evidence. In a case in which, in order to find for the plaintiff, the trial court is required to find that a given fact has been established by "clear and convincing" evidence, the evidence is not sufficient to allow appellate affirmance of a judgment based on that finding unless the record contains evidence from which the fact-finder reasonably could have determined that the fact was proven by clear and convincing evidence. Contrary to the suggestion in the lead opinion, the process of making this determination by an appellate court is, in its essence, no different in one case than in the other, and no more requires an appellate court to engage in the weighing or "reweighing" of evidence in one case than in the other.
In Ex parte Norwood Hodges Motor Co., 680 So.2d 245 (Ala.1996), our Supreme Court considered the quantum of evidence necessary to require submission of factual questions to the jury when the ultimate evidentiary standard is greater than a mere preponderance of the evidence. The Court began its analysis by taking note of § 12-21-12(a) and (c), Ala.Code 1975, which state:
"`(a) In all civil actions brought in any court of the state of Alabama, proof by substantial evidence shall be required to submit an issue of fact to the trier of the facts. Proof by substantial evidence shall be required for purposes of testing the sufficiency of the evidence to support an issue of fact in rulings by the court, including without limitation, motions for summary judgment, motions for directed verdict,[[4]] motions for judgment notwithstanding the verdict, and other such motions or pleadings respecting the sufficiency of evidence.'
"_______________
"`(c) With respect to any issue of fact for which a higher standard of proof is required, whether by statute, or by rule or decision of the courts of the state, substantial evidence shall not be sufficient to carry the burden of proof, and such higher standard of proof shall be required with respect to such issue of fact.'"
680 So.2d at 248 (emphasis added).
Although Ex parte Norwood Hodges Motor Co. involved the question whether the trial court had erred in granting a directed verdict (now a judgment as a matter of law, see note 3, supra) to a defendant on the question of the plaintiff's entitlement to punitive damages, as noted in the above-quoted text of § 12-21-12(a), the statute contemplates the same treatment for any motion testing the sufficiency of the evidence. Logically, of course, the *760 same treatment is proper for testing the sufficiency of the evidence by an appellate court. It therefore is instructive that, in considering the text of both subsection (a) and subsection (c) of § 12-21-12, the Supreme Court concluded in Ex parte Norwood Hodges Motor Co. that
"the trial court should have determined whether the evidence warranted submitting the issue of punitive damages to the jury, i.e., whether there was evidence of such quality and weight that a jury of reasonable and fair-minded persons could find by clear and convincing evidence that the defendant consciously or deliberately engaged in fraud."
Ex parte Norwood Hodges Motor Co., 680 So.2d at 249 (emphasis added). As our Supreme Court explained in Lowman v. Piedmont Executive Shirt Manufacturing Co., 547 So.2d 90 (Ala.1989),
"a plaintiff, in order to go to the jury on a claim [alleging intentional tortious conduct], must make a stronger showing than that required by the `substantial evidence rule' as it applies to the establishment of jury issues in regard to tort claims generally. See Code 1975, § 12-21-12. Therefore, . . . the plaintiff must present evidence that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud."
547 So.2d at 95 (quoted with approval in Hobbs v. Alabama Power Co., 775 So.2d 783, 787 (Ala.2000), ITT Specialty Risk Servs., Inc. v. Barr, 842 So.2d 638, 646 (Ala.2002), and Soti v. Lowe's Home Ctrs., Inc., 906 So.2d 916, 923 (Ala.2005)) (emphasis added). Cf. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3, 9 (Ala.1997) (quoting with approval the trial court's order denying a postjudgment motion for relief in which the trial court explained that "`[t]here was evidence from which the jury could find, by a clear and convincing standard, that'" the requisite element of the plaintiff's claim had been proven).
As I wrote in Gary v. Crouch, 923 So.2d 1130 (Ala.Civ.App.2005):
"The `clear-and-convincing-evidence' standard . . . is the standard ultimately to be applied at trial by the fact-finder in this [defamation] case, just as the `preponderance-of-the-evidence' standard is applied in most civil cases by the fact-finder. The responsibility for making ultimate factual determinations resides with the fact-finder, in this case a jury, not with a trial judge in considering a summary-judgment motion. It is no more the responsibility of a trial judge in considering a motion for a summary judgment to make the ultimate determination of whether a plaintiff in a defamation suit has proven constitutional malice by clear and convincing evidence than it would be for a trial judge considering a summary-judgment motion in an ordinary lawsuit to determine whether a plaintiff has demonstrated the elements of his or her claim by a preponderance of the evidence.
"When the ultimate standard to be applied by the fact-finder in a civil case is a preponderance-of-the-evidence standard, it is for the trial judge . . . to determine only whether there is a genuine issue of material fact. That determination, in turn, is a function of whether there is `substantial evidence' as to that material fact. In the context in which preponderance of the evidence is the ultimate standard of proof for the fact-finder, substantial evidence has been defined simply as that evidence from which the fact-finder could reasonably infer the existence of the fact sought to be proved.
"Similarly, substantial evidence in the context of a case in which the ultimate standard for a decision is clear and convincing *761 evidence is evidence that a fact-finder reasonably could find to clearly and convincingly establish [the existence of] the fact sought to be proved. Thus, even if a trial judge reaches his or her own conclusion that the evidence presented does not clearly and convincingly establish constitutional malice, it is not for him or her to act upon that factual determination, but to determine instead whether the actual fact-finder could reasonably make a different finding based upon the same evidence. . . . [T]he opinion of the United States Supreme Court in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), . . . verifies that any different conclusion would be inappropriate."
923 So.2d at 1141-42 (Murdock, J., concurring in the result) (emphasis added).
Likewise, the evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly establish the fact sought to be proved. Even if an appellate court in considering the evidence of record would reach its own conclusion that the evidence presented does not clearly and convincingly establish the fact sought to be proved, it is not for that court to act upon its own factual determination but to determine instead whether the fact-finder below reasonably could have made a different finding based on the same evidence.
Although it dealt with the issue of the sufficiency of the evidence in the context of summary-judgment and directed-verdict motions, the reasoning of the United States Supreme Court in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), is persuasive:
"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. . . .
". . . [In a defamation case], where the First Amendment mandates a `clear and convincing' standard, the trial judge in disposing of a directed verdict motion should consider whether a reasonable fact-finder could conclude, for example, that the plaintiff had shown actual malice with convincing clarity.
". . . [I]n United States v. Taylor, 464 F.2d 240 (2d Cir.1972), . . . [the Court] pointed out that almost all the Circuits had adopted something like Judge Prettyman's formulation in Curley v. United States, 160 F.2d 229, 232-233 (D.C.Cir. 1947):
"`The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. . . .'
"This view is equally applicable to a civil case to which the `clear and convincing' standard applies. . . .
". . . .
"Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. . . .
"Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the *762 evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Adickes [v. S.H. Kress & Co.], 398 U.S. [144], at 158-159 [(1970)]. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. Kennedy v. Silas Mason Co., 334 U.S. 249 (1948).
"In sum, we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. . . . Consequently, where the New York Times [Co. v. Sullivan, 376 U.S. 254 (1964),] `clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute concerns actual malice, clearly a material issue in a New York Times case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not."
477 U.S. at 252-56, 106 S.Ct. 2505 (emphasis added; footnote omitted).
Finally, I would add that the Alabama Supreme Court has made it clear that "the 1992 amendments to the Workers' Compensation Act `did not alter the rule that [the Court of Civil Appeals] does not weigh the evidence before the trial court.' Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995)." Ex parte Golden Poultry Co., 772 So.2d 1175, 1176-77 (Ala.2000) (emphasis added). See also Ex parte Drummond Co., 837 So.2d 831, 832-33; and Ex parte Kmart Corp., 812 So.2d 1205, 1207 (Ala.2001).

II. International Paper Co. v. Melton

I also disagree with the lead opinion's characterization of, and the manner in which it calls into question, this court's holding in Melton. The lead opinion's characterization and questioning of that holding are not well founded, and are not necessary in order to reach the result that is reached.
I begin by noting that Melton was decided just three years ago, and, moreover, unlike the Ex parte Russell Corp. decision with which the lead opinion suggests Melton may be inconsistent, Melton is a majority decision of this court to which the principle of stare decisis applies. In addition, I see nothing in this court's opinion in Melton that is inconsistent with the majority holding in our Supreme Court's decision in Southern Energy, which was released on the same day as was Melton. Rather, I believe the lead opinion in the present case attempts to now raise, "without deciding," questions about our holding in Melton based (a) on an understatement of the evidence in the record that supported the trial court's judgment in that case, and (b) on an oversimplification of the holding in Melton as merely drawing a distinction between possibility evidence and "probability" evidence.[5]
*763 The lead opinion describes the evidence and the holding of Melton in the following passage:
"In urging affirmance of the trial court's judgment, McInish relies primarily upon the majority opinion in International Paper Co. v. Melton, 866 So.2d 1158 (Ala.Civ.App.2003). In that case, a judgment awarding workers' compensation benefits to a particular employee based on a cumulative-stress disorder allegedly arising from his employment was affirmed on the basis that a physician had opined that the employee's work as a forklift driver `"could be causative and can be a contributing factor"' with respect to the employee's disorder (carpal tunnel syndrome). 866 So.2d at 1167.
"The majority opinion in Melton distinguished United Defense, L.P. v. Willingham, 829 So.2d 771 (Ala.Civ.App. 2002), in which this court reversed a similar judgment because the strongest tendency of the expert testimony was that the employee's work `could possibly [have] cause[d]' her gradual-deterioration condition in that case. 829 So.2d at 772. Thus, the majority opinion in Melton, when compared with Willingham, indicates that the `clear and convincing' evidentiary standard enunciated in § 25-5-81(c) may be deemed satisfied on appeal by expert-opinion evidence indicating a probability, rather than a mere possibility, of medical causation. But cf. Ex parte Southern Energy Homes, Inc., 873 So.2d at 1122 (in which the Supreme Court, in an opinion issued on the same day that Melton was decided by this court and invoking the more lenient `substantial evidence' standard of review, nevertheless reversed a judgment awarding workers' compensation benefits based upon an employee's back condition when the expert testimony regarding medical causation `at best established a possibility that [that employee's] back condition was caused by her alleged on-the-job injury').
"Assuming, without deciding, that the holding in Melton is consistent with the evidentiary standard set forth in § 25-5-81(c) and the appellate-review standard indicated in Ex parte Russell Corp., supra, the expert evidence upon which McInish urges reliance plainly does not amount to evidence of `probable' causation."
47 So.3d at 754.
As to the foregoing description of the evidence in Melton, the lead opinion's summary of the medical testimony fails to fully recount the evidence in that case, just as in Melton, itself, the employer failed to recount a portion of the evidence. As the majority of this court explained in Melton:
"International Paper refers this court to certain medical testimony and medical records, attempting to analogize the facts in this case to the facts in [United Defense, L.P. v.] Willingham[, 829 So.2d 771 (Ala.Civ.App.2002)]. International *764 Paper quotes from the deposition testimony of Dr. Swaid, Dr. Lett, and Dr. Hill; in each of the quoted excerpts, the doctor testified that Melton's job as a forklift operator `could have' caused Melton's carpal tunnel syndrome. International Paper further quotes Dr. Hill's deposition testimony where he testified that Melton's job as a forklift operator `probably' was a contributing factor to Melton's carpal tunnel syndrome. International Paper also quotes an excerpt from Dr. Kezar's medical records where she noted on May 4, 1998, `[c]arpal tunnel syndrome by previous nerve conduction studies, not related to work injury.'
"At the outset, we note that International Paper's summary of medical testimony fails to recount the portion of Dr. Lett's testimony that supported the trial court's finding that `Dr. Charles Lett testified that . . . [Melton's] work activities were contributing factors to his carpal tunnel syndrome; [and] that his work activities had aggravated his carpal tunnel syndrome':
"`[COUNSEL FOR MELTON]: Doctor, that's a letter that I wrote you back in December of 1998.[4] And in that letter I ask you whether or not his work operating a forklift was a contributing factor to his Carpal Tunnel Syndrome. At that time you replied your opinion was that it was. Was that your opinion at that point in time?

"`. . . .
"`[DR. LETT]: Yes, sir.

"`[COUNSEL FOR MELTON]: And do you have an opinion today to the same question?
"`[DR. LETT]: I don't see any reason it hasn't changed. Forklift driver work activity could be causative and can be a contributing factor for Carpal Tunnel Syndrome.
"`[COUNSEL FOR MELTON]: And is that your opinion today.
"`[DR. LETT]: Yes.'
"___________
"4 That letter asked the question, `Doctor based on your examination and treatment of [Melton], do you have an opinion as to whether or not work was a contributing factor to his medical problems?' In a handwritten response on the face of the letter, Dr. Lett responded, `Work as a forklift driver could cause and is a contributing factor to carpal tunnel syndrome.'"
866 So.2d at 1166-67 (emphasis added).
As to the holding in Melton, that holding is in my opinion oversimplified by the lead opinion in the present case. It is more accurately stated in the manner in which the majority of this court stated it in Melton, itself, namely:
"We do not read our holding in Willingham as requiring this court to conclude, as a matter of law, that in each and every case where the trial court's record includes conflicting medical evidence on the issue of whether an employee's carpal tunnel syndrome is work related, including some medical evidence that the employee's carpal tunnel syndrome was not work related, that the employee has failed to present clear and convincing evidence that the injury was work related. To do so would be to improperly intrude on the trial court's role as fact-finder. Not only might the trial court choose, in an appropriate case, to give greater weight to contrary medical evidence (e.g., the testimony of one or more physicians who opine that the employee's injury did arise out of his work), it also might, in an appropriate case, give weight to the lay testimony presented, including that of the employee *765 himself. As this court stated in Goodyear Tire & Rubber Company v. Snell, 821 So.2d 992, 997 (Ala.Civ.App. 2001):
"`The trial court may find medical causation without testimony from medical doctors. Ex parte Price, 555 So.2d 1060 (Ala.1989). The totality of the evidence, including both lay and expert testimony, may satisfy a showing of medical causation. U.S. Steel, A Div. of USX Corp. v. Nelson, 634 So.2d 134 (Ala.Civ.App.1993). Further, it is well settled that a conflict in the evidence as to medical causation in a workers' compensation case presents an issue of fact to be determined by the trial court, and not by the appellate courts of this state. ATEC Assocs., Inc. v. Stewart, 674 So.2d 1296 (Ala.Civ.App.1995).'
". . . .
"We acknowledge that in some cases involving carpal tunnel syndrome, such as the one before us, the only honest testimony that a doctor can give is that, in his or her opinion, the carpal tunnel syndrome `could have been' or `probably was' work related; to require a doctor to give a more certain conclusion regarding medical causation in such instances would be to encourage employees to find a doctor who would be willing to be less than truthful, and, ultimately, only those employees who were able to find such a doctor could prevail. Further, the fact that there is conflicting medical evidence regarding the issue of whether an employee's carpal tunnel syndrome is work related should not automatically render the evidence before the trial court to be less than clear and convincing. The resolution of conflicting evidence as to medical causation is to be determined by the trial court, not the appellate courts. Goodyear, supra.

"In cases involving `cumulative-stress' carpal tunnel syndrome, the employee must present clear and convincing evidence tending to show that the stressor, i.e., the repetitive nature of the job in the present case, was at least a contributing cause of the injury. See Ex parte Trinity Indus., Inc., 680 So.2d 262, 266-67 (Ala.1996); see also B E & K, Inc. v. Weaver, 801 So.2d 12, 18 (Ala.Civ.App. 2000). Based on the particular medical testimony presented in this case, as well as the testimony of the employee himself, which tended to support the trial court's findings, we cannot conclude that the trial court did not have before it sufficient evidence from which it could reasonably find that Melton presented clear and convincing evidence that his carpal tunnel syndrome was work related."
Melton, 866 So.2d at 1167-68.
In contrast to the evidence of record in Melton, the particular medical and lay testimony in the present case does not in my opinion constitute "sufficient evidence from which [the trier of fact] could reasonably find that [the employee] presented clear and convincing evidence that his [condition] was work related."[6]Melton, 866 So.2d at 1168.

*766 III. Madix, Inc. v. Champion

Finally, I also feel compelled to correct what I believe to be a mischaracterization of the holding by this court in Madix, Inc., 927 So.2d 833. The lead opinion states that Madix "holds [that] a judgment awarding workers' compensation benefits based upon a cumulative-stress disorder or a gradual deterioration cannot properly be affirmed when the testimony of the pertinent medical experts establishes `no more than a "possibility" that [an employee's] employment contributed to [the employee's] injuries' so as to simply `"`guess' the employer into liability."'" 47 So.3d at 754 (quoting Madix, Inc., 927 So.2d at 838, quoting in turn Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App. 1989)). The lead opinion takes the above-quoted passage from Madix out of context in a manner that makes it appear to suggest that proof of causation depends on the presence or absence of medical testimony of a certain nature. That is not what Madix says.[7]
Nowhere in Madix does this court purport to overrule the well-established "totality-of-the-evidence" standard acknowledged by this court and by our Supreme Court in countless cases, including the above-quoted passages from Melton. See, e.g., Goodyear Tire & Rubber Co. v. Snell, 821 So.2d 992, 997 (Ala.Civ.App.2001), and Melton, supra. The portion of the above-quoted passage from the lead opinion that is actually drawn from the Madix opinion was merely part of this court's explanation in Madix that, in that particular case, the employee's doctors' testimony established no more than a "possibility" that his employment caused his injuries. The majority opinion in Madix elsewhere quotes with approval the statement of our Supreme Court in Southern Energy that
"`"[i]t is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence, and not in the witness's use of any magical words or phrases, that the test [for medical causation] finds its application."'"
Madix, Inc., 927 So.2d at 837 (quoting Ex parte Southern Energy Homes, Inc., 873 So.2d at 1121, quoting in turn Ex parte *767 Price, 555 So.2d 1060, 1063 (Ala.1989)). Furthermore, following the passage upon which the lead opinion here attempts to rely, the Madix opinion proceeds to explain its holding as being based as well on the testimony of the employee himself and, ultimately, on the "totality of the evidence." 927 So.2d at 838.
It is based on that same totality standard, and without positing a standard that requires the use of any magical words or phrases, that I believe this court can, and that I do, conclude that the evidence in the present case was insufficient to permit a reasonable fact-finder to find that McInish proved causation clearly and convincingly. In my view, it is not necessary, and under our precedents is not correct, to apply any different standard in order to reach such a conclusion.
CRAWLEY, Presiding Judge, dissenting.
I respectfully dissent. The main opinion states that the expert testimony in this case does not meet the required "clear and convincing" standard enunciated in § 25-5-81(c), Ala.Code 1975, but amounts to nothing more than a showing of "possible" causation, which is insufficient to support the trial court's judgment that McInish's injury arose out of his employment with KGS. We have acknowledged that in some cases involving cumulative-stress disorders, such as carpal tunnel syndrome, the only honest testimony that a doctor can give is that, in his or her opinion, the injury "`could have been'" or "`probably was'" work related. We have said that "to require a doctor to give a more certain conclusion regarding medical causation in such instances would be to encourage employees to find a doctor who would be willing to be less than truthful, and, ultimately, only those employees who were able to find such a doctor could prevail." International Paper Co. v. Melton, 866 So.2d 1158, 1168 (Ala.Civ.App.2003). Furthermore, a trial court may find medical causation without the testimony of medical experts, and the totality of the evidence, including lay-person and expert testimony, may satisfy a showing of medical causation. See Ex parte Price, 555 So.2d 1060 (Ala.1989), and U.S. Steel, A Div. of USX Corp. v. Nelson, 634 So.2d 134 (Ala.Civ. App.1993). In this case, although Dr. Meyer, KGS's authorized physician, determined that McInish's condition was not related to his employment, Dr. Kelsey stated that McInish's neck problems were "consistent with" the cumulative trauma described by McInish. In addition, McInish's physique had drastically changed from when he started working for KGS to the time of trial, and testimony indicated that the onset of McInish's symptoms of his condition occurred during his employment with KGS, where he was subjected to violent vibrations. The resolution of conflicting evidence as to medical causation is the province of the trial court, not the appellate courts, and based on the totality of the evidence the trial court could have reasonably found that McInish presented clear and convincing evidence indicating that his disability arose out of his employment.
NOTES
[1] In contrast to the judgment under review in Ex parte Russell Corp., which did not indicate that the clear-and-convincing-proof standard had been applied, the trial court in this case explicitly invoked the correct standard of proof in its judgment. Thus, unlike in Ex parte Russell Corp., there is no jurisprudential impediment to determining in this appeal whether McInish "met [his] burden in this case" of adducing clear and convincing evidence of causation (725 So.2d at 267).
[2] Judge Murdock's criticism of this proposition overlooks § 25-5-81(e)(1), Ala.Code 1975, which plainly envisions de novo appellate review of the applicable "standard of proof."
[3] Although the lead opinion cites Justice Johnstone's dissenting opinion in Southern Energy, 873 So.2d at 1128, for the proposition that "the legislature has `require[d] a comparison between the supporting evidence and any countervailing evidence' on appellate review," 47 So.3d at 752, the emphasized phrase is not found in Justice Johnstone's dissenting opinion. To the contrary, the passage that is actually quoted from Justice Johnstone's dissenting opinion is one in which Justice Johnstone clearly is referencing the evidentiary standard to be applied by the fact-finder, not the appellate court.

Further, the lead opinion responds both to my explication of Justice Johnstone's special writing in Southern Energy and, more generally, my criticism of the lead opinion's assertion that it is appropriate for an appellate court to reweigh the evidence, by stating that I have "overlooked" § 25-5-81(e)(1). The lead opinion apparently misreads § 25-5-81(e)(1).
Section 25-5-81(e) reads in its entirety as follows:
"From an order or judgment, any aggrieved party may, within 42 days thereafter, appeal to the Court of Civil Appeals and review shall be as in cases reviewed as follows:
"(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
"(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."
Section 25-5-81(e)(1) simply provides that an appellate court makes its own decision as to whether a trial court has utilized the correct standard of proof (whether a trial court has done this being a question of law, as is both self-evident and indicated in the above-emphasized portion of the statute); an appellate court does not defer to the trial court's decision on the "legal issue" of what standard of proof the trial court should have applied.
The fact that we as an appellate court have the responsibility for determining whether a trial court has applied the correct standard of proof in assessing and weighing the evidence, and making a finding of fact, is a wholly different notion than that being proposed in the lead opinion, which is that the appellate court itself has some responsibility for assessing and weighing the evidence. I have not "overlooked" § 25-5-81(e)(1); § 25-5-81(e) simply is inapposite to the point of disagreement between this judge and the lead opinion.
[4] A motion for a directed verdict is now referred to as a motion for a judgment as a matter of law. See Rule 50, Ala. R. Civ. P.
[5] Judge Pittman's special writing also understates the evidence that supported the trial court's judgment in Melton and oversimplifies the holding in Melton. Further, I reject any implication that I would not "apply the majority opinion in Southern Energy to cases that come before this court." 47 So.3d at 755 (Pittman, J., concurring specially). Applying the precedent of Southern Energy or any other case contemplates applying the holding of that case, not the facts of that case. Applying the holding of Southern Energy or any other Supreme Court precedent does not equate with an attempt to match up, compare, or contrast different bits or phrases of testimony between different cases. Again, what is required by Southern Energy in particular is a case-by-case analysis based on the totality of both the lay and expert testimony, and the other evidence, in each case, and not, as Southern Energy itself stated, "`in [a] witness's use of any magical words or phrases.'" 873 So.2d at 1121 (quoting Ex parte Price, 555 So.2d 1060, 1063 (Ala.1989)).
[6] I reject any suggestion that (1) the holding of this court in Melton, (2) the holding of this court in the more recent case of Madix, Inc., which is discussed in this regard in more detail in section III, infra, (3) the holding of numerous cases cited in both Melton and Madix, Inc., including our Supreme Court's decision in Ex parte Price, 555 So.2d 1060 (Ala. 1989), or (4) our Supreme Court's recent holding in Southern Energy, itself  all of which confirm that a judgment must be based on the "`overall substance and effect'" or "`totality'" of the evidence, both lay and medical, without any reliance upon "`magical words or phrases,'" 873 So.2d at 1121  result in "the employers of Alabama and their insurers [being] `guessed' into liability by reliance upon equivocal or evasive opinions concerning medical causation." 47 So.3d at 756 (Pittman, J., concurring specially). Juries, and judges in bench trials, are required to make factual decisions consistent with applicable standards of proof. The fact that a decision is made in favor of a plaintiff in the face of conflicting evidence does not mean that a defendant has been "guessed" into liability, any more than a decision in favor of a defendant under such circumstances means that the plaintiff has been "guessed" out of a recovery. This is simply the nature of how lawsuits are decided. The clear import of the above-cited holdings by both this court and our Supreme Court is that, as in any non-workers' compensation case, circumstantial evidence, lay testimony, and other nonmedical evidence can, if it is clear and convincing, satisfy the plaintiff's burden of proof in a case in which the standard of proof is clear and convincing evidence, even when the doctors that the trial court finds to be credible are unable, due to the state of medical science or other circumstances, to supply the necessary clear and convincing evidence by themselves. On the other hand, if, after considering the totality of all of the evidence, the case for causation remains "equivocal" or "evasive," or for that matter is anything less than clear and convincing in a case in which the standard of proof is clear and convincing evidence, then the plaintiff will not have met his or her burden of proof and should not prevail. Nothing in any of the above-cited cases is inconsistent with this principle.
[7] Judge Pittman's special writing in this case also wrongly suggests that proof of causation depends on the presence of expert medical testimony utilizing certain verbiage. Our Supreme Court's reaffirmation in Southern Energy of the "totality-of-the-medical-and-lay-testimony" standard of proof is discussed in the text that follows this note.