PER CURIAM.
In April 1999, Donald Mclnish sued KGS Steel, Inc. (“KGS”), in the Bessemer Division of the Jefferson Circuit Court, seeking an award of benefits under the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”). In his complaint, Mclnish alleged, among other things, that during his employment as a truck driver for KGS, he had been subjected to “violent bouncing and jerking movement” that had caused him to suffer from carpal tunnel syndrome and that that movement, combined with “strain caused by strapping and binding cargo loads,” had caused damage to his shoulders and neck; he further alleged that he had suffered both a temporary and a permanent partial disability as a result of his claimed injuries. After KGS had answered the complaint, the cause was stayed pending the resolution of receivership proceedings involving KGS’s insurer; the cause was ultimately tried on April 14, 2004.
At trial, the parties stipulated that Mclnish had suffered a carpal-tunnel-syndrome injury that resulted in a 3% permanent partial impairment to both hands and that that injury was compensable. The parties also agreed that the real issues in the case were whether Mclnish’s neck and shoulder problems were a result of an injury that arose out of and in the course of his employment and, if so, the degree of the loss of his earning capacity. Following the trial, the trial court entered a judgment determining that Mclnish was totally and permanently disabled as a consequence of his neck and shoulder conditions; that he had a 100% loss of earning capacity; that he had proven both medical and legal causation; and that KGS was liable for payment of certain medical expenses incurred as a result of treatment undertaken by a medical provider whom KGS did not authorize.
KGS appeals from that judgment, raising three issues: (1) whether Mclnish presented “clear and convincing” evidence that his neck and shoulder injuries were compensable under the Act; (2) whether the trial court erred in determining that Mclnish had suffered a permanent and total disability; and (3) whether the trial court erred in concluding that KGS was responsible for payment of medical treatment that KGS did not authorize.
We briefly summarize the facts giving rise to Mclnish’s claim. Mclnish was a tractor-trailer truck driver for KGS, and there was evidence adduced at trial indicating that the suspension system of his assigned truck subjected him to violent vibrations. Mclnish testified that during the last year of his employment with KGS he had started to experience severe pain, numbness, and a tingling sensation in his hands and arms and that he had reported those symptoms to KGS.
Mclnish was referred by KGS to Dr. Donald Autry for treatment. Dr. Autry determined that Mclnish had carpal tunnel syndrome and performed a surgical carpal-tunnel-release procedure on each of Mclnish’s wrists. In subsequent months, Mclnish reported further pain, including pain in his shoulder and upper arm. Mclnish was then referred to Dr. Richard Meyer, an orthopedic surgeon, for a second opinion; *751 Dr. Meyer determined that Mclnish had problems in his neck and hand. Dr. Meyer suggested that Mclnish undergo a second carpal-tunnel-release procedure; however, because Mclnish was dissatisfied with the results of the carpal-tunnel-release procedures that had already been performed and because he did not want to go through another carpal-tunnel-release procedure if carpal tunnel syndrome was not his principal medical problem, Mclnish sought the opinion of his own personal physician without obtaining KGS’s approval. Melnish’s personal physician then referred Mclnish to Dr. Cem Cezayirli, a neurosurgeon. Dr. Cezayirli, who was also not authorized by KGS to treat Mclnish, nonetheless admitted him into the hospital for cervical-disk surgery, during which significant ruptured-disk material and a herniated disk compressing the neuroforamen and the spinal cord were found. After his cervical-disk surgery, Mclnish was permitted by Dr. Cezayirli to return to work. However, Mclnish was reportedly unable to perform his job because of pain, and he has not worked since January 27, 1999.
Under the Act, our review of the “standard of proof’ and “other legal issues” in an appeal from a judgment entered on a claim arising under the Act is to be undertaken “without a presumption of correctness.” Ala.Code 1975, § 25 — 5—81(e)(1). That legislative injunction is particularly significant in this case, which undisputedly involves a claim of disability arising from an alleged work-related injury to Mclnish’s shoulders and neck resulting from gradual deterioration; such claims are, as we will discuss herein, subject to a heightened “standard of proof.”
In 1992, the Alabama Legislature made a number of procedural and substantive changes to the law governing workers’ compensation claims. See Act No. 92-537, Ala. Acts 1992. In § 1 of that statute, the legislature observed:
“It is ... the intent of the Legislature ... to address difficulties in the current scheme that are producing a debilitating and adverse effect on the state’s ability to retain existing industry and attract new industry. The Legislature finds that the current Workmen’s Compensation Law of Alabama and other means of compensation or remedy for injury in the workplace ha[ve] unduly increased cost to employers in the state, driven away jobs, and produced no concomitant benefit. There is a total absence of any reliable evidence that the current act has resulted in fewer injuries on the job, and a considerable body of evidence that any added benefit to the worker is significantly offset by the resulting reduction in job opportunities.
“The Legislature has reviewed substantial evidence related to various types of cumulative physical stress disorders, cumulative trauma disorders and certain ‘natural aging1 disorders, including carpal tunnel syndrome, repetitive motion syndrome, and even back and neck infirmities that result from gradual deterioration or the natural process of aging. The Legislature has concluded that it is extremely difficult for the adjudicator of fact to determine whether these disorders are related to work or whether they result from some congenital defect, aging processes, or simply the routine activities of daily living.
“These claims also account for a substantial percentage of the workers’ compensation claims in this state and are one of the contributing causes of the current workers’ compensation crisis facing this state.”
Act No. 92-587, among other things, amended § 25-5-81, Ala.Code 1975, to state that the standard of proof in work *752 ers’ compensation cases would be proof by the preponderance of the evidence “except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee’s employment.” Act No. 92-537, § 26 (emphasis added), now codified as Ala.Code 1975, § 25-5-81(c).
It is well settled that when the preponderance-of-the-evidence standard applies to a particular workers’ compensation claim, such as one arising from an injury caused by a sudden trauma, an appellate court will not reverse a judgment based upon a particular finding of fact “if that finding is supported by substantial evidence — if that finding is supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996) (quoting West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989)) (emphasis added). However, as the main opinion in Ex parte Russell Corp., 725 So.2d 264 (Ala.1998), indicates, a mere “substantial evidence” standard of appellate review is not to be applied if the “clear-and-convincing-proof” standard was applicable at trial.[1] In other words, by incorporating a “clear and convincing” evidentiary standard into the Act with respect to gradual-deterioration and cumulative-stress injuries, the legislature has “require[d] a comparison between the supporting evidence and any countervailing evidence” on appellate review. See Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1128 (Ala.2003) (Johnstone, J., dissenting, joined by Woodall, J.).[2] Thus, “there is necessarily a ‘reweighing’ of the evidence at the appellate level[] for th[e] limited purpose” of determining whether factual determinations are supported by the appropriate level of evidence (here, “clear and convincing proof’). See id. at 1131 (Harwood, J., dissenting) (emphasis omitted).
KGS argues that Mclnish failed to present clear and convincing evidence of medical causation as required under § 25-5-81(c). As might be expected, resolution of that issue requires a close examination of the pertinent evidence adduced at trial that appears in the record on appeal.
Dr. Meyer, Mclnish’s authorized orthopedic surgeon, testified at his deposition that after a magnetic-resonance-imaging procedure had been performed in late 1998 and had revealed bulging cervical disks and neck-nerve pressure related to osteoarthritis, he had referred Mclnish to Dr. John S. Kirkpatrick, who had concluded that the arthritis in Mclnish’s neck “would probably not be work related.” Dr. Meyer also opined that the majority of the pain Mclnish had experienced was related to that osteoarthritis and denied that Mclnish’s occupation could have caused or aggravated his osteoarthritis. Dr. Meyer further opined on cross-examination by *753 Mclnish’s attorney that driving a truck subject to constant vibration and shaking would not adversely affect Mclnish’s condition as to his neck and shoulders.
Dr. Edward Kelsey, a pain specialist whom Mclnish consulted without authorization from KGS, opined that Mclnish suffered from degenerative joint disease (essentially, a pronounced case of advanced osteoarthritis) and from “post laminectomy syndrome.” After indicating that repeated trauma “can cause microscopic changes in the bone structure and in the joints” so as to accelerate osteoarthritis, he opined that Mclnish’s occupation would be “consistent with” this type of trauma and that the problems reported by Mclnish “could have been” as a result of cumulative trauma. However, Dr. Kelsey also opined that Mclnish’s advanced osteoarthritis had set in over the course of an approximately “ten-year period of time,” whereas Mclnish worked for KGS for less than one and a half years before filing a first report of injury in November 1997. Further, Dr. Kelsey, on cross-examination, admitted that he did not have any evidence to dispute Dr. Kirkpatrick’s and Dr. Meyer’s opinions that Mclnish’s neck and shoulder conditions were not work related, and in response to a question concerning whether he could state with any degree of medical certainty that Mclnish’s neck and shoulder problems were work related, he stated that he could not definitely say that those symptoms were work related.
Dr. Laura B. Kezar, a physician who examined Mclnish in March 1999 upon the referral of Dr. Thomas, noted in her report of that examination her impression that Mclnish suffered from cervical spondylosis and degenerative disk disease; she noted in her report that Mclnish had not supplied a “history to suggest an acute disc herniation related to a traumatic event at work” and that he had reported “no history of neck pain until after the surgery on his neck” was performed by Dr. Cezayirli. Dr. Kezar opined that Mclnish’s neck pain “appealed] to be mainly myofascial in origin” (iemuscular) and averred that it “d[id] not seem likely” that Mclnish’s work caused the problems in his neck “based on the history that he ha[d] given” her.
Certain records of Dr. Cezayirli, who performed the cervical-disk surgery on Mclnish, were also admitted into evidence. In a March 1999 letter to Dr. Reid S. Christopher, Dr. Cezayirli indicated that Mclnish had told him that “he thinks this is work-related.” Dr. Cezayirli opined that “it certainly could be work-related,” but he stated that it was difficult for him to render such an opinion because, he said, Mclnish consulted him well after any on-the-job injury would have occurred. However, in a November 1999 letter to Mclnish’s counsel, he expressly deferred to the treating physician who had seen Mclnish at the time he had originally reported symptoms (e.g., Dr. Meyer).
At trial, Mclnish himself testified that he had not experienced comparable levels of neck and shoulder pain before working for KGS, that he believed that that pain could be related to “throwing ... chains and binders and driving [his] truck,” and that KGS was responsible for his having sustained what he termed “spinal cord damage” because, he said, KGS “wouldn’t take care of the problem in my neck and kept pushing me off.” However, on cross-examination, Mclnish admitted having executed an application for disability-income benefits in March 1999 on which appeared the response of “no” to a question asking whether his claimed disability had resulted from his employment; he also admitted having received monthly benefit payments of over $500 after that application was submitted. Mclnish further testified to having unsuccessfully requested KGS per *754 sonnel in April 1999 to amend his November 1997 written first notice of injury, which had indicated only “wrist pain and numbness,” to include a shoulder injury.
In urging affirmance of the trial court’s judgment, Mclnish relies primarily upon the majority opinion in International Paper Co. v. Melton, 866 So.2d 1158 (Ala.Civ.App.2003). In that case, a judgment awarding workers’ compensation benefits to a particular employee based on a cumulative-stress disorder allegedly arising from his employment was affirmed on the basis that a physician had opined that the employee’s work as a forklift driver “ ‘could be causative and can be a contributing factor’ ” with respect to the employee’s disorder (carpal tunnel syndrome). 866 So.2d at 1167.
The majority opinion in Melton distinguished United Defense, L.P. v. Willingham, 829 So.2d 771 (Ala.Civ.App.2002), in which this court reversed a similar judgment because the strongest tendency of the expert testimony was that the employee’s work “could possibly [have] cause[d]” her gradual-deterioration condition in that case. 829 So.2d at 772. Thus, the majority opinion in Melton, when compared with Willingham, indicates that the “clear and convincing” evidentiary standard enunciated in § 25-5-81(c) may be deemed satisfied on appeal by expert-opinion evidence indicating a probability, rather than a mere possibility, of medical causation. But cf. Ex parte Southern Energy Homes, Inc., 873 So.2d at 1122 (in which the Supreme Court, in an opinion issued on the same day that Melton was decided by this court and invoking the more lenient “substantial evidence” standard of review, nevertheless reversed a judgment awarding workers’ compensation benefits based upon an employee’s back condition when the expert testimony regarding medical causation “at best established a possibility that [that employee’s] back condition was caused by her alleged on-the-job injury”).
Assuming, without deciding, that the holding in Melton is consistent with the evidentiary standard set forth in § 25-5-81(c) and the appellate-review standard indicated in Ex parte Russell Corp., supra, the expert evidence upon which Mclnish urges reliance plainly does not amount to evidence of “probable” causation. As our recent opinion in Madix, Inc. v. Champion, 927 So.2d 838 (Ala.Civ.App.2005), holds, a judgment awarding workers’ compensation benefits based upon a cumulative-stress disorder or a gradual deterioration cannot properly be affirmed when the testimony of the pertinent medical experts establishes “no more than a ‘possibility’ that [an employee’s] employment contributed to [the employee’s] injuries” so as to simply “ ‘ “guess” the employer into liability.’ ” 927 So.2d at 838 (quoting Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App.1989)). The testimony of Dr. Kelsey and the qualified opinions of Dr. Cezayirli amount to nothing more than a showing of “possible” causation that is insufficient to support the trial court’s judgment that Mclnish’s disability, which is based in significant part upon his neck and shoulder conditions, arose out of his employment with KGS.
The insufficiency of the evidence concerning causation likewise renders infirm both the trial court’s conclusion regarding the degree of Mclnish’s disability resulting from his employment (a conclusion that was based primarily upon Mclnish’s back and neck symptoms) and that court’s determination that KGS should be held liable for the payment of medical treatment that was rendered to Mclnish with respect to his back and neck symptoms without the consent of KGS. See Drummond Co. v. Harris, 824 So.2d 775, 778 (Ala.Civ.App.2001) (reversal of workers’ compensation *755 judgment on basis that trial court erred in determining existence of occupational disease obviated necessity of addressing degree of employee’s disability), and 2 Terry A. Moore, Alabama Workers’ Compensation § 17:2 (1998) (noting that the Act does not require an employer to furnish medical and surgical attention for health conditions unrelated to the employment). Thus, for the reasons stated herein, the trial court’s judgment is reversed in its entirety, and the cause is remanded for the entry of a judgment or for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, J., concurs specially.
THOMPSON and BRYAN, JJ„ concur in the result, without writing.
MURDOCK, J., concurs in the result, with writing.
CRAWLEY, P.J., dissents, with writing.

. In contrast to the judgment under review in Ex parte Russell Corp., which did not indicate that the clear-and-convincing-proof standard had been applied, the trial court in this case explicitly invoked the correct standard of proof in its judgment. Thus, unlike in Ex parte Russell Corp., there is no jurisprudential impediment to determining in this appeal whether Mclnish “met [his] burden in this case” of adducing clear and convincing evidence of causation (725 So.2d at 267).

. Judge Murdock’s criticism of this proposition overlooks § 25 — 5—8l(e)(I), Ala.Code 1975, which plainly envisions de novo appellate review of the applicable "standard of proof.”