PITTMAN, Judge.
This appeal from a judgment of the Chil-ton Circuit Court focuses on whether the evidence presented in support of a workers’ compensation claim asserted by James L. Harris (“the employee”) against DeSha-zo Crane Company (“the employer”) based upon a cumulative-physical-stress injury *107 purportedly arising out of and in the course of his employment met the “clear and convincing” evidentiary standard required by the Alabama Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq. (“the Act”).
The employee sued the employer, seeking an award of workers’ compensation benefits. The employer argued that it could not be shown by clear and convincing evidence that the employee’s eye disorder had been caused by his employment. The trial court, after an ore tenus proceeding, awarded benefits, and it is from that judgment that the employer has appealed.
The employee, a welder for all of his adult life, worked for the employer from 1997 until 2000 and again from 2002 to 2004. Late in 2002, when he began to experience impaired vision, the employee consulted an optometrist. The optometrist referred the employee to a retina surgeon, Dr. Milton White. Dr. White determined that the employee suffered from choroidal neovascularization, also called choroidal neovascular membrane (“CNVM”).
CNVM is a condition in which new, abnormal blood vessels grow in the choroid, a layer of tissue behind the retina. These blood vessels can leak blood and clear fluid into the retina, interfering with vision and potentially causing blindness. The employee’s vision, formerly good, declined by 2005 to 20/200 in his right eye and 20/3,600 in his left eye, rendering him legally blind and unable to drive an automobile or to work as a welder. The employee has no other work skills, and the evidence at trial clearly established that he is totally disabled.
The record reflects that the field of medicine acknowledges many potential causes of CNVM, including but not limited to ordinary age-related macular degeneration; histoplasmosis (a condition caused by exposure to airborne fungi from bird droppings); physical trauma; nearsightedness; and injury from unprotected exposure to strong ultraviolet (“UV”) radiation, such as that created by welding. It is common also for physicians to refer to a case of CNVM as “idiopathic” when the cause of a particular occurrence of the condition cannot be determined from an examination of the patient. The central fact question before the trial court was whether the employee’s CNVM was actually idiopathic or properly could have been found to have been caused by his welding activities for the employer.
The employer argues that the evidence presented by the employee to the trial court in an effort to establish that the CNVM arose from his employment did not meet the “clear and convincing” standard set forth in the Act at Ala.Code 1975, § 25-5-81(c). That section provides the following definition of “clear and convincing evidence”:
“evidence that, when weighted against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.”
However, under our caselaw, the actual weighing of evidence “against evidence in opposition” is the province of the trial court. Even in the context of workers’ compensation claims that the Act requires to be proven by clear and convincing evidence, appellate courts are not permitted to reweigh the evidence presented to the trial court by, for instance, estimating the credibility of witnesses; rather, § 25-5-81(c) requires that the “firm conviction” arise in “the mind of the trier of fact,” not *108 in the “mind” of the appellate court. See Ex parte McInish, 47 So.Bd 767, 773 (Ala.2008). The appellate court must review the evidence and the trial court’s judgment solely to answer, the question whether “ ‘the fact-finder reasonably could have determined that the fact was proven by clear and . convincing evidence.’ ” Id. at 774 (quoting KGS Steel, Inc. v. McInish, 47 So.3d 749, 759 (Ala.Civ.App.2006) (Mur-dock, J., concurring in the result)). In deciding whether it was reasonable for a trial court to have concluded that a fact was proven by clear and convincing evidence, i.e., whether it was reasonable for the fact-finder to reach a firm conviction as to each essential element of the claim and infer a high probability as to the correct; ness of the conclusion, the appellate court must limit its determination' to “whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court’s weighing of the evidence, that would” produce a firm conviction in the mind of the trier of fact. Ex parte McInish, 47 So.3d at 778.
As to the “substantial evidence” standard of appellate review, “substantial evidence” properly is defined as “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Further, Ala.Code 1975, § 25-5-81(e)(2), mandates the use of the “substantial evidence” standard of appellate review when reviewing “pure findings of fact,” but it does not distinguish between cases in which a claimant’s eviden-tiary burden at trial is a “preponderance of the evidence” or “clear and convincing” evidence; because the Act is silent in that regard, appellate courts must review judgments by viewing evidence adduced to meet either the “preponderance” or the “clear and convincing” evidentiary burden under the same “substantial evidence” standard, foreclosing appellate reweighing of evidence in both types of cases. Ex parte McInish, 47 So.3d at 773. That said, the “substantial evidence” standard of review is applied in “necessarily different degrees” in the two types of cases, with “the quantum of proof necessary to sustain on appeal” a finding of fact in a “clear and convincing” context being “greater than” that in a “preponderance” context. Id. at 777-78.
Therefore, the proper standard to be applied in reviewing a judgment awarding benefits under the Act in response to a claim that requires the claimant to adduce proof amounting to clear and convincing evidence can be restated properly as follows: The trial court’s judgment is to be affirmed if the trial court was presented with evidence of such weight and quality that fair-minded persons, in the exercise of impartial judgment, reasonably could reach a firm conviction as to each essential element of the claim and infer a high probability as to the correctness of the conclusion.
In this case, the parties’ dispute and the evidence presented at trial focused on causation, as other elements of the employee’s claim were undisputed. Under the Act, the employee was required to prove that his CNVM arose out of, and in the course of, his employment with the employer— hex-e, that “flashes” from welding activity led to the employee’s vision impairment. Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App.1989); Ala.Code 1975, § 25-5-51.
The record reflects that each welder’s workplace at the employei-’s premises was surrounded by standing portable sci-eens intended to pi-otect woi*kers on the factoi-y *109 floor from the radiation created by the welding. The employee testified that there were occasions when screens separating him from other welders were removed by other employees while he was wearing his protective hood and welding. The employee further testified that he was certain that his CNVM could be traced to three or four particular incidents when his eyes had been exposed to the arcs of other welders on occasions when he had removed his welder’s hood to inspect his work without his having known that a coworker had removed one or more of the screens the employee relied on for protection. The employee and his paramour both testified that on one occasion, after such an incident, the employee had come home complaining of pain in his eyes, stating that he had “burned” his eyes at work; on that occasion, the employee’s paramour had transported the employee to an emergency room, and a doctor had prescribed medicated eye drops and a follow-up visit. Other testimony indicated that on other occasions when the employee had come home from work complaining of an eye burn the employee and his paramour would routinely apply that prescription medication or would administer a reportedly effective nonmedical remedy.
The employee was unable to produce any documentary evidence of the emergency-room visit, and although the employee was required by the employer’s personnel policy to report any incident of workplace injury, he never claimed that he had reported any of his three or four alleged workplace eye burns to the employer. Likewise, the employer maintained no records in the employee’s personnel file that indicated that the employee had made any report of a workplace injury, although federal law requires that employers create and retain such reports.
The witness who gave the most extensive and pertinent direct testimony, and who was the most comprehensively cross-examined witness, was the surgeon, Dr. White. .At trial, Dr. White adhered to his original diagnosis of the employee’s CNVM as being idiopathic, although at occasional points in his testimony he used such terms as “probable” and “probability” when discussing welding as a possible cause of the employee’s CNVM. The record also revealed that Dr. White previously had submitted to an insurer and to the employer a written opinion that the employee’s CNVM was not job-related.
In addition to that evidence, however, Dr. White explained at his deposition and at trial that, when CNVM is diagnosed, retinal specialists generally seek “associated findings” — abnormalities in the eye in addition to CNVM itself — that might suggest a cause of the patient’s CNVM. The “associated finding” suggesting UV radiation to be the cause of a particular case of CNVM is other scarring in the retina; however, the employee’s eyes did not exhibit any such “other scarring.” Moreover, Dr. White admitted that unprotected exposure to the flash of a nearby welding torch was the only named factor in the employee’s personal history that could possibly change the diagnosis from “idiopathic” CNVM to CNVM resulting from a known cause. Repeatedly, under both direct examination and cross-examination, Dr. White said “I don’t know” to questions asking what had caused the employee’s CNVM.' Dr. White did elaborate that, absent the employee’s history of welding work, he would have been “100%” certain that the “idiopathic” label was correct. Also repeatedly, Dr. White refused to say, because of the lack of associated medical findings, such as scarring,, whether it was “more likely than not” that the employee’s CNVM was caused by UV exposure, given the employee’s history as a welder. Ulti *110 mately, Dr. White refused to commit himself to the proposition that welding could be anything more than a possible cause of the employee’s CNVM.
“ ‘It is a well established principle that evidence presented by a [workers’] compensation claimant must be more than evidence of mere possibilities that would only serve to “guess” the employer into liability.’ ” Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1122 (Ala.2003) (quoting Hammons v. Roses Stores, Inc., 547 So.2d at 885). However, although expert testimony might be required to establish causation in cases in which the “nature and origin” of the condition in question “is obviously beyond the understanding of the average person,” Ex parte Trinity Indus., Inc., 680 So.2d at 269, lay testimony may be combined with expert testimony in establishing the requisite proof of causation. Ex parte Price, 555 So.2d 1060, 1063 (Ala.1989). Further, the medical testimony need not express absolute certainty as to causation, id. at 1062, and trial courts are encouraged to view the evidence in its totality in reaching conclusions. Madix, Inc. v. Champion, 927 So.2d 833, 837-38 (Ala.Civ.App.2005). Finally, the fact-finder is authorized to find the causation element absent medical evidence to that effect. Pnce, 555 So.2d at 1062.
In this case, it was the employee’s burden to establish legal causation and medical causation. Legal causation, which has been defined so as to require that the employee’s job exposed him to a materially greater risk of developing CNVM than people ordinarily encounter, see, e.g., Ma-dix, 927 So.2d at 837, was undisputed; this risk is in fact an apparent reason for the employer’s having provided protective screens and welder’s hoods. Medical causation, which would require here that the employee’s work for the employer be a “contributing” cause of the CNVM, id., was disputed, and the trial court’s finding as to medical causation was, in effect, dis-positive of the entire case.
Here, the trial court was presented with the evidence previously discussed in detail, as well as evidence tending to show that the employee’s vision had been measured as being as acute as 20/20 immediately before he began his employment with the employer in 2002. Thus, the employee rapidly deteriorated from having excellent vision to suffering from legal blindness over the course of about three years. The pattern of injury followed the risks of the job and the course of the employee’s complaints, distinguishing the employee’s case from similar cases in which our courts have ruled in favor of employers (e.g., Ex parte Southern Energy Homes, 873 So.2d at 1122, in which physicians determined that the patient’s back injury, as diagnosed, was not consistent with the patient’s physical mobility or complaints of pain). Dr. White was unable to testify with any certainty regarding causation so as to favor either party’s position, distinguishing this case from Madix, 927 So.2d at 835, in which the pertinent physician testified that it was more likely than not that the claimant’s injury was not caused by workplace exposure.
Under the facts of this case, the trial court reasonably could have ruled in favor of either party. But having reviewed inconclusive medical evidence, the conflicting testimony from the parties as to workplace conditions (such as the placement and removal of protective screens), and the employee’s complete occupational and medical history, it appears to us that the trial court was presented with evidence of such weight and quality that, using fair-minded and impartial judgment, that court reasonably could have reached a firm conviction as to medical causation and inferred a high *111 probability as to the correctness of its conclusion regarding causation.
Based upon the foregoing facts and authorities, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writing.