MOORE, Judge,
dissenting.
The Jefferson Juvenile Court (“the juvenile court”) entered a judgment terminating the parental rights of J.S.L. (“the mother”) to J.Z.L. (“the child”). On appeal, the mother and the guardian ad litem for the child argue that the judgment is not supported by clear and convincing evidence of grounds for termination. I agree.
Alabama Code 1975, § 12-15-319, sets out the exclusive grounds for which parental rights may be terminated. J.B. v. De-Kalb Cnty. Dep’t of Human Res., 12 So.3d 100, 110 (Ala.Civ.App.2008) (plurality opinion). That statute provides that parental rights may be terminated only based on clear and convincing evidence that the parent is unable or unwilling to adequately parent the child. See Fitzgerald v. Fitzgerald, 539 So.2d 281 (Ala.Civ.App.1988) (applying the predecessor to § 12-15-319). Specifically, § 12-15-319(a) provides that a juvenile court may terminate parental rights based only on clear and convincing evidence demonstrating
“that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly, care for the child and that the conduct or condition is unlikely to change in the foreseeable future.”
Notably, the termination statute “speaks in present and future terms.” S.K. v. State Dep’t of Human Res., 993 So.2d 15, 23 (Ala.Civ.App.2008). “This court has consistently held that the existence of evidence of current conditions or conduct relating to a parent’s inability or unwillingness to care for his or her children is implicit in the requirement that termination of parental rights be based on clear and convincing evidence.” D.O. v. Calhoun Cnty, Dep’t of Human Res., 859 So.2d 439, 444 (Ala.Civ.App.2003); see also Ex parte T.V., 971 So.2d 1, 6 (Ala.2007). When determining whether the state has proven that parental rights should be terminated, the juvenile court is tasked with assessing a parent’s ability to parent not as it existed in the past, but as it exists in its present state as of the date of the trial and its likely state going forward. See S.U. v. Madison Cnty. Dep’t of Human Res., 91 So.3d 716 (Ala.Civ.App.2012) (Per Moore, J., with four Judges concurring in the result).
Although “[a juvenile] court may consider the past history of the family,” Ex parte State Dep’t of Human Res., 624 So.2d 589, 593 (Ala.1993), a juvenile court cannot base a decision to terminate parental rights solely on past parental conduct, conditions, or circumstances. See In re K.A.W., 133 S.W.3d 1, 10 n. 6 (Mo.2004) (“ ‘[I]t is inappropriate to use prior determinations of neglect as dispositive on the neglect issue at the time of the termination hearing. Courts are generally required to make new findings of fact based on the changed conditions in light, of the parents’ history-of neglect and likely future neglect.... Most courts will agree that neglect must exist at the time of the termination hearing, and that it is inappropriate to terminate a parent’s rights on the basis of neglect that happened in the remote past and no longer exists.’” (quoting 32 Am.Jur. Proof of Facts 3d Parental Rights § 6 (2003))).
*878 “[B]ased on the plain language of the statute, and as clarified by our caselaw, the mere fact that, at one time, the parent, may have committed conduct or suffered from a condition that rendered the parent unable to properly care for the child does not authorize a juvenile court to terminate parental rights. See V.M. v.. State Dep’t of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998). Rather, the test is whether [the Department of Human Resources] has presented clear and convincing evidence demonstrating that the parental conduct or condition currently persists to such a degree as to continue tó prevent the parent from properly caring for the child.”
M.G. v. Etowah Cnty. Dep’t of Human Res., 26 So.3d 436, 442 (Ala.Civ.App.2009) (plurality opinion). If clear and convincing evidence shows that parental conduct, conditions, or circumstances requiring separation of the family persists, then, and only then, may a juvenile court deem a parent “ ‘irremediably unfit’ ” and terminate that parent’s parental lights on that basis. A.E.T. v. Limestone Cnty. Dep’t of Human Res., 49 So.3d 1212, 1217 (Ala.Civ.App.2010) (quoting D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 94 (Ala.Civ.App.2003)).
In the present case, the evidence shows that, because of problems with marijuana usage and domestic violence between the mother and her paramour, the juvenile court had terminated the parental rights of the mother to four of her children between 2002 and 2008. Section 12-15-319(a)(8),' Ala.Code 1975, requires a juvenile court, when deciding whether a parent is unable or unwilling to discharge his or her parental responsibilities to and for a child, to consider the prior involuntary termination of that parent’s parental rights to a sibling of the child. No Alabama appellate opinion has thoroughly discussed the effect of a prior termination judgment on a present termination petition.
In Florida Department of Children & Families v. F.L., 880 So.2d 602 (Fla.2004), the Florida Supreme Court construed § 39.806(l)(i), Fla. Stat., which, at that time, provided:
“ ‘(1) The department, the guardian ad litem, or any person who has knowledge of the facts alleged or who is informed of those facts and believes they are true may petition, for the termination of parental rights under any of the following -circumstances:

(( i

“ ‘(i) When the parental rights of the parent to a sibling have been terminated involuntarily.’ ”
880 So.2d at 607. Some lower Florida courts had determined that that statute created a 'rebuttable presumption in favor of the termination of the parental rights to a child when the parental rights to a sibling of that child have been previously terminated, placing the burden on parents to rebut that presumption. See, e.g., A.B. v. Department of Children & Families, 816 So.2d 684 (Fla.Dist.Ct.App.2002). Other lower Florida courts had questioned the constitutionality of such á rebuttable presumption. See, e.g., F.L. v. Department of Children & Families, 849 So.2d 1114 (Fla.Dist.Ct.App.2003). The Florida Supreme Court agreed with the latter line of cases, holding that, as a matter of due process, the state bears' the burden of proving that reunification with a parent poses a substantial risk of harm to the child éven in cases involving a prior involuntary termination of parental rights to a sibling. The Florida Supreme Court held that, in order to validly terminate parental rights on the basis of a prior termination judgment, a court cannot rely solely on the undisputed evidence indicating that paren *879 tal rights to .a sibling have been, involuntarily terminated but must also determine that whatever led to the earlier termination likely continues so as to expose the child to a substantial risk of parental harm and that termination of parental rights is the least restrictive way of protecting the child from that harm. 880 So.2d at 608-10. See also In re Jah’za G., 141 Conn.App. 15, 60 A.3d 392 (2013) (court did not err in taking judicial notice of termination of mother’s parental rights to sibling based on physical assault of sibling when court did not rely solely on that previous judgment but also received evidence indicating that mother had not rehabilitated herself and that she posed significant risk to' child).
In D.O., supra, this court held that the necessity for proving current conditions arises directly from the requirement that clear and convincing evidence support a judgment terminating parental rights, which is mandated by the Due Process' Clause of the Fourteenth Amendment to the United States Constitution. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Thus, the same constitutional concerns that informed the decision of the Florida Supreme Court in F.L., supra, apply equally in Alabama. Accordingly, under § 12 — 15—319, a juvenile court may terminate parental rights based on evidence of a prior involuntary termination of parental rights to a sibling of the child only when the evidence further shows that the parental conduct, conditions, or circumstances that led to the prior involuntary termination of his or her parental rights to the child’s sibling currently persists so as to prevent the parent from being able to properly care for the child.
In this case, the evidence in the record shows that, when the mother gave birth to the child on November 29, 2012, the Jefferson County Department of Human Resources (“DHR”) immediately obtained custody of the child. Scarlett Holt, a social worker for DHR, testified that DHR removed the child from the mother based solely on her “previous issues,”' with no investigation of her current, circumstances. The record indicates that DHR filed a dependency petition, which the juvenile-court judge stated “ha[d] to do with the history” of the mother; that petition was granted in December 2012 based on a stipulation by the mother.
DHR failed to present any evidence indicating that the mother had continued to use marijuana or any other illegal drug since 2011. Nevertheless, the juvenile court ordered the mother to undergo a drug assessment and drug screening. The mother did not immediately or consistently comply with that order. The record indicates that the. mother, who had missed over 10 scheduled drug screens, waited until January 2014 to-commence an outpatient substance-abuse program and that, while participating in that program, she was drug tested only twice. However, Adrian Hall, the social worker who oversaw the mother’s case from October 2013 through the trial dates in July and August 2014, testified that she never' suspected that the mother was using illegal drugs at any point. Eiwanna Morris, the mother’s substance-,abuse counselor, also testified that the mother did not exhibit any signs of illegal drug use from January 2014 through June 2014 while undergoing therapy.
When deciding whether a parent is unable or unwilling to discharge his or her parental responsibilities to and for a child, a juvenile court must consider whether the parent’s “excessive use of alcohol or controlled substances, of a duration or nature ... render[s] the parent unable to care for needs of the child.” Ala.Code 1975, § 12-15~319(a)(2). In this case, not only did *880 DHR fail to present any evidence indicating that the mother was using any controlled substances, much less excessively using such substances, but DHR also presented absolutely no evidence regarding the effect of marijuana use on parenting ability either in the abstract or in the specific case of the mother.
DHR also presented no evidence indicating that the mother was participating in domestic violence. The mother testified, without contradiction, that she was not in any romantic relationship and that she lived alone. Hall testified that the mother had completed domestic-violence-prevention classes at the YWCA and that DHR was no longer concerned about the risks of domestic violence in the mother’s home. DHR did not present any evidence indicating that the mother’s conduct or condition presented any risk of physical harm to the child. See Roe v. Conn, 417 F.Supp. 769, 779 (M.D.Ala.1976) (“The State’s interest ... become[s] ‘compelling1 enough to sever entirely the parent-child relationship only when the child, is subjected to real physical or emotional harm and less drastic measures would be unavailing.” (emphasis added)); In re Moore, 470 So.2d 1269, 1271-72 (Ala.Civ.App.1985) (holding that the state need not wait until a child is actually harmed before terminating parental rights, but must present clear and convincing evidence that the child is subjected to an undue risk of harm by maintenance of the parent-child relationship). DHR thus failed to prove that any of the circumstances that led to the prior terminations between 2002 and 2008 continued so as to render the mother unable to parent the child.
DHR also failed to present any other evidence indicating that the mother lacked the present ability to adequately parent the child. Hall testified that the mother had completed parenting classes, indicating she held the minimum parenting skills to care for the child. Hall did testify that, during visitations, the mother had to be prompted to interact with the child, but that testimony alone does not show that the mother lacks proper parenting skills. Some evidence also indicates that the mother has an intellectual or learning disability, but DHR offered no evidence indicating that the impairment would prevent the mother from adequately parenting the child. The mother receives $710 per month in government benefits due to her disability, which is her only income, but DHR did not present any evidence indicating that the mother would be ineligible for further financial assistance in order to meet the material needs of the child. See Ala.Code 1975, § 12-15-319(a)(9).
The mother did fail to cooperate with DHR’s efforts to obtain a psychological assessment and to arrange for drug screening and treatment. Partly for that reason, DHR sought and obtained an order in December 2013 relieving it of the duty to use reasonable efforts to reunite the mother with the child based on the ground that those efforts had failed. See Ala.Code 1975, § 12-15-319(a)(7). However, when deciding whether reasonable efforts by DHR leading toward rehabilitation have failed, a juvenile court must determine the reasonableness of the efforts DHR made and assess the effects of those efforts on the ability of the parent to adequately care for the child. T.B. v. Cullman Cnty, Dep’t of Human Res., 6 So.3d 1195, 1199 (Ala.Civ.App.2008) (citing H.H. v. Baldwin Cnty. Dep’t of Human Res., 989 So.2d 1094 (Ala.Civ.App.2007)). In order to terminate parental rights, a juvenile court must find that reasonable rehabilitation efforts have failed such that the parental conduct, conditions, or circumstances that inhibited the ability of the parent to properly care for the child continue at the time of trial in such a degree *881 as to prevent family reunification. See, e.g., B.J.K.A. v. Cleburne Cnty. Dep’t of Human Res., 28 So.3d 765 (Ala.Civ.App.2009). That inquiry focuses not on whether the parent complied with, or even followed, the rehabilitation plan proffered by DHR, but concerns solely whether the barrier to family reunification remains after rehabilitation efforts have been concluded. See, e.g., S.K. v. State Dep’t of Human Res., 993 So.2d 15 (Ala.Civ.App.2008) (Per Moore, J., with Thompson, P.J., concurring in the result only and Pittman and Bryan, JJ., concurring in the result) (fact that parents used faith-based pastoral counseling instead of more scientific counseling recommended by the Department of Human Resources did not indicate that parents lacked sufficient skills to parent children); see also R.T.B. v. Calhoun Cnty. Dep’t of Human Res., 19 So.3d 198, 205 (Ala.Civ.App.2009) (although parent has achieved all goals of rehabilitation plan, juvenile court may still terminate parental rights upon finding that parent still lacks sufficient ability to care for child). In this case, DHR presented no evidence indicating that the mother’s lack of cooperation with its rehabilitation plan rendered her presently unable to adequately parent the child, and it failed to present any evidence indicating that the mother currently suffers from any psychological or drug problem interfering with her parenting ability as a direct result of her noncompliance with DHR’s rehabilitation efforts.
Finally, DHR did not present any evidence indicating that the efforts undertaken independently by the mother in 2014 to complete substance-abuse counseling, parenting classes, and domestic-violence classes did not adequately address any of those perceived barriers to family reunification. The main opinion states that the juvenile court could have been convinced that “the mother’s completion of those requirements’ in 2014 amount to ‘last-minute efforts undertaken in anticipation of the impending ' termination-of-parental-rights trial.’ A.M.F. v. Tuscaloosa Cnty. Dep’t of Human Res., 75 So.3d 1206, 1213 (Ala.Civ.App.2011) (citing J.D. v. Cherokee Cnty. Dep’t of Human Res., 858 So.2d 274, 277 (Ala.Civ.App.2003)).” 180 So.3d at 876. If so, the timing would not present any grounds for termination. As explained above, a- juvenile court must determine whether, at the time of the trial,- a parent currently lacks the ability to parent the child. Nothing in the law allows a juvenile court to terminate parental rights on the ground that a parent had only recently acquired the means or ability to adequately parent the child. Because of the fundamental rights at stake, see Santosky v. Kramer, 455 U.S. 745, a juvenile 'court cannot take the view that a parent who completes rehabilitation only shortly before trial is just “too late.”
A juvenile court can lawfully determine that rehabilitation' efforts have only “temporarily removed or merely hidden” barriers to family reunification, see J.W.M. v. Cleburne Cnty. Dep’t of Human Res., 980 So.2d 432, 439 (Ala.Civ.App.2007) (plurality opinion), and that, despite the efforts of a parent at rehabilitation, the parent remains “‘irremediably unfit.’” A.E.T., 49 So.3d at 1217 (quoting D.M.P. v. State Dep’t of Human Res., 871 So.2d at 94). However, that determination must be based on “clear and convincing evidence,” see Ala.Code 1975; § 12-15-319(a), which is defined as
“[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear ■ and convincing evidence requires a level of proof greater than a *882 preponderance of the evidence or the substantial weight of the evidence, but less than,beyond a reasonable doubt.”
Ala.Code 1975, § 6-11-20(b)(4). See also L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002); and Ex parte T.V., 971 So.2d at 9.
When determining the sufficiency of the evidence in an appeal from a termination judgment, this court is “required ... to determine whether clear and .convincing evidence supports” the factual findings of the juvenile court. Ex parte T.V., 971 So.2d at 9. In Ex parte McInish, 47 So.3d 767 (Ala.2008), the supreme court approved of the following language from then Judge Murdock’s special concurrence in KGS Steel, Inc. v. McInish, 47 So.3d 749, 761 (Ala.Civ.App.2006):
“ ‘[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence, is evidence that a fact-finder reasonably could find to clearly and convincingly ... establish the fact sought to be proved.’ ”
Ex parte McInish, 47 So.3d at 778. In the present context, the standard of review does not allow this .court-to reweigh, the evidence, but requires this court to
“look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court’s weighing of the evidence, that would ‘produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion.’ ”
Ex parte McInish, 47 So.3d at 778 (quoting Ala.Code 1975, § 25-5-81(c)).
The McInish standard of review has been used in numerous termination-of-parental-rights cases since 2008- See, e.g., H.T. v. Cleburne Cnty. Dep’t of Human Res., 163 So.3d 1054, 1070 (Ala.Civ.App.2014); F.L. v. K.P., 155 So.3d 1024, 1026 (Ala.Civ.App.2014); B.C. v. A.A., 143 So.3d 198, 203 (Ala.Civ.App.2013); T.J. v. Calhoun Cnty. Dep’t of Human Res., 116 So.3d 1168, 1175 (Ala.Civ.App.2013); S.U. v. Madison Cnty. Dep’t of Human Res., 91 So.3d 716, 723 (Ala.Civ.App.2012); and T.H. v. Jefferson Cnty. Dep’t of Human Res., 70 So,3d 1236, 1247-48 (Ala.Civ.App.2010) (Per Moore, J., with Thompson, P.J., and Bryan, J., concurring in the result). That standard of review does not remove the presumption of correctness afforded to a juvenile court’s factual findings in eases involving oral testimony, see H.T., supra, but it does clarify that a judgment terminating parental rights is “plainly and palpably wrong” within the meaning of the ore tenus rule, see J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007), when the factual conclusions underpinning that judgment are not supported by a sufficient quantum of evidence from which a‘juvenile court reasonably could have been clearly convinced of them correctness. Ex parte McInish, supra; see also J.C., 986 So.2d at 1200 (Moore, J., concurring in the result) (“A judgment terminating parental mights is ‘plainly and palpably wrong’ if based on factual findings that are unsupported by clear and convincing evidence.”).
In this case, the judgment cannot be affirmed on the ground that DHR proved that the mother did not genuinely rehabilitate herself. DHR did not present any evidence, much less clear and convincing evidence, indicating that the mother had any current problems preventing her from properly caring for the child. DHR did not even attempt to.prove that the mother had only temporarily or unsatisfactorily addressed her past problems through her own rehabilitation efforts. DHR made no *883 effort to undermine the programs the mother completed or the progress she achieved. Hence, the. juvenile court did not have any evidentiary basis to.conclude that the mother had not successfully overcome her past problems. -
In his brief to this court, the child’s guardian ad litem, a lawyer for over 40 years, states that “no case in this [lawyer’s] experience-has caused greater angst to the soul of this humble lawyer than the case presently before this [cjourt,” because, “as the record now stands before this- [cjourt .. .■ [DHR] has failed to meet its heavy burden by clear and convincing evidence.” I share the concerns of the guardian ad litem. I agree that the. record does not contain clear and convincing evidence to support either statutory ground for the termination of the mother’s parental rights and that the judgment of the juvenile court should be reversed. Therefore, I respectfully dissent.